OPINION OF THE COURT
La Tia W. Martin, J.
Petitioner, by order to show cause, moved this court for an order enforcing his attorney’s lien pursuant to Judiciary Law § 475 and directing the respondents to turn over to him outstanding attorney fees in the amount of $16,025 from child support arrearage collected by the City of New York Support Collection Unit on behalf of petitioner’s former client, Maria Placencia. Petitioner also moved for sanctions and counsel fees against the respondents.
Respondents, the City of New York Support Collection Unit and Tracy Alter, Esq., opposed petitioner’s application and sought a declaratory judgment pursuant to CPLR 3001. The Support Collection Unit moved pursuant to CPLR 510 (a) for a *480 change of venue from the Supreme Court, Bronx County, to the Supreme Court, New York County. The Support Collection Unit argued that the underlying Family Court cause of action arose in New York County, their principal offices are in New York County, and respondent Maria Placencia presumably resides in New York County. Additionally, the Support Collection Unit seeks to remove respondent Tracy Alter, Esq. as a party respondent pursuant to CPLR 1003.
Petitioner opposed the Support Collection Unit’s application for a declaratory judgment and argued that a declaratory judgment must be sought in an action at law, and not in a special proceeding. Petitioner also opposed the application for a change of venue arguing that CPLR 511 (a) and (b) mandate that a party seeking a change of venue must make such motion on notice to all parties. Petitioner stated that respondent Maria Placencia’s last known address was in Bronx County, his office is located in Bronx County, and pursuant to CPLR 506, a special proceeding against the City of New York may be venued in any New York City County wherein the City of New York has principal offices, or within any County within that judicial district. Respondent, Maria Placencia, did not respond or oppose petitioner’s application.
Background
According to the petitioner, in 1992, respondent, Maria Placencia, retained him to prosecute a paternity action against Jose Deleon, a former professional baseball player with the Chicago White Sox. Petitioner claims that after years of litigation and effort, an order of filiation and child support was obtained from the New York County Family Court in favor of respondent Placencia on behalf of the infant child. The Support Collection Unit records reflect that on or about March 29, 1995, an order was entered directing Jose Deleon to pay child support for the parties’ minor child in the amount of $1,500 per month. In addition, retroactive child support arrears were determined to be $35,796.73, and the Support Collection Unit was directed to release $10,000 being held for respondent Placencia as partial liquidation of the arrears. The order also required Jose Deleon to pay an additional $10,000 for attorney fees to Maria Placencia on or before June 28, 1995 pursuant to section 454 of the Family Court Act.
On June 22, 1999, the Support Collection Unit received a check payable to the child support account of Jose Deleon in the amount $77,264.62. The check was received from the New *481 York State Department of Taxation and Finance after the monies were seized from a bank account of Mr. Deleon.* The Support Collection Unit did not release the funds to respondent Placencia because they did not have a current address. In addition, the Support Collection Unit’s file contained entries dated April and May of 1995 referencing an oral notice of an attorney’s lien by petitioner. On July 29, 1999, the Support Collection Unit contacted the petitioner to inquire about the attorney’s lien and to obtain current information regarding the address of respondent Placencia. Petitioner acknowledged his attorney’s lien and sought to enforce same.
Petitioner argued that on August 3, 1999, respondent Tracy Alter, Esq. informed him that the respondents would not recognize his attorney’s lien. He stated that the Support Collection Unit did not provide any legal authority contrary to Judiciary Law § 475 that would indicate that his attorney’s lien was not enforceable. He asserted the burden is upon the respondents to demonstrate that his lien is not enforceable because a prima facie case had been established. Petitioner further argued that the several cases cited by the respondents are distinguishable from this case because they primarily involved divorce actions and alimony.
Petitioner stated that alimony was intended to support the ex-wife, and when the seminal cases were decided in 1917, she normally had a minimal source of income. He further argued that child support was intended to reimburse the ex-spouse to care for the infant child in such a manner that was appropriate considering the living conditions that the child would have had if the family were living together. In addition, petitioner argued that the New York State Legislature has expressly stated that New York’s public policy under Judiciary Law § 475 was to encourage attorneys to represent those persons without funds to pay in advance to retain qualified counsel. In furtherance of such policy, petitioner argued that the Legislature has created this powerful engine of recovery as an expansion of the common-law lien, which by its very terms, reaches into all hands. Petitioner cited the case of Spinello v Spinello (70 Misc 2d 521 [Sup Ct, Nassau County 1972]), and noted that the court ruled in favor of an attorney’s lien taking priority over child support arrears.
*482 The Support Collection Unit argued that it was established under Social Services Law § 111-h (1) “to collect, account for and disburse funds paid pursuant to any order of child support or child and spousal support issued under the provisions of section two hundred thirty-six or two hundred forty of the domestic relations law, or article four, five, five-A or five-B of the family court act.” It is the position of the Support Collection Unit that Social Services Law § 111-h (4) requires that “Any and all moneys paid into the support collection unit pursuant to an order of support made under the family court act or the domestic relations law, where the petitioner is not a recipient of public assistance, shall upon payment into such support collection unit be deemed for all purposes to be the property of the person for whom such money is to be paid.” They argued that there is no authority under the enabling statutes or regulations which mandates the collection and disbursement of attorney fee payments in addition to child support and spousal support. The Support Collection Unit asserted that it has no legal duty or power to decide fee disputes between attorneys and their clients.
In addition, the Support Collection Unit argued that New York State has historically been amongst the strongest proponents of the public policy considerations which have led many jurisdictions nationwide to exempt awards of alimony and child support from the operation of attorneys’ liens. It was noted that most of the cases in New York involved the exemption of alimony rather than child support from attorneys’ liens, however, the policy considerations set forth in the New York case law applicable to alimony are equally, if not more, applicable to child support.
Change of Venue
The Support Collection Unit’s application for a change of venue is hereby denied. CPLR 506 (b) allows a proceeding against a body or officer to be commenced in any county within the judicial district where the respondent has a principal office. Although the underlying Family Court matter originated in New York County, the City of New York Support Collection Unit maintains a principal office in Bronx County. Moreover, both New York County and Bronx County are within the 12th Judicial District. Accordingly, the application for a change of venue is hereby denied.
*483 Nonjoinder and Misjoinder of Parties
The Support Collection Unit’s application to remove respondent Tracy Alter, Esq. as a party from this action is hereby granted. Respondent Alter is an attorney employed by the Support Collection Unit, and was acting within her official capacity. There is no information in the record to suggest that respondent Alter is a necessary party to this action. (Matter of Sagamore Auto Body v County of Nassau, 104 AD2d 818 [2d Dept 1984]; Matter of Szanto v Dumpson, 77 Misc 2d 392 [Sup Ct, Kings County 1974].) There is no indication that respondent Alter acted outside the scope of her authority. (See, CPLR 1003.) Accordingly, respondent’s application is hereby granted.
Declaratory Judgment
CPLR 3001 provides that “The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds.” Petitioner argued that the Support Collection Unit’s application for a declaratory judgment should be denied because it is improper to seek such relief judgment in a special proceeding as is the case at bar, and that a declaratory judgment must be sought in an action at law. Petitioner argued that the Support Collection Unit should commence an action at law for a declaratory judgment and the court should deny any ruling in respondent’s favor. It has been established that decisions of whether to grant declaratory relief are discretionary in character. (Smyley v Tejada, 171 AD2d 660; Town of Fishkill v Royal Dutchess Props., 231 AD2d 511 [2d Dept 1996].) Many courts have long granted declaratory relief in special proceedings to determine the rights of the respective parties. (See, for example, Boulevard Gardens Tenants Action Comm. v Boulevard Gardens Hous. Corp., 88 Misc 2d 98 [Sup Ct, Queens County 1976]; Matter of Brown v Wing, 170 Misc 2d 554 [Sup Ct, Monroe County 1996].) Moreover, CPLR 103 (c) allows the court to correct actions initiated in the wrong form. Accordingly, this court will exercise its discretion and will render a declaratory judgment in this matter. Any procedural differences between a special proceeding and an action for a declaratory judgment are not significant in this case. (See, Matter of Brown v Wing, 170 Misc 2d 554.)
*484 Discussion
The primary issue before the court is whether the Support Collection Unit has a legal duty to disburse any portion of child support funds in its possession to an attorney asserting an attorneys lien. Judiciary Law § 475 allows, “From the commencement of an action, special or other proceeding in any court * * * the attorney who appears for a party has a lien upon his client’s cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client’s favor, and the proceeds thereof in whatever hands they may come * * * The court upon the petition of the client or attorney may determine and enforce the lien.” In the instant matter, respondent Placencia does not dispute that she owes the petitioner $16,025 in attorney fees for prosecuting a paternity action that resulted in a judgment in her favor. As petitioner argued and case law reflects, a charging lien does not depend on possession, and it is good no matter in whose hands the decision, award or judgment may be. (Matter of Sebring, 238 App Div 2d 281 [4th Dept 1933].) Moreover, the charging lien binds the award or judgment which has been obtained through the attorney’s efforts, and is only enforceable upon the funds created by the attorney’s efforts. (Matter of Sebring, 238 App Div 281; In re Duke Assocs., 611 F2d 15 [2d Cir 1979].)
It is clear the funds being held by the Support Collection Unit are the result of petitioner’s successful efforts to establish paternity and the child support obligation. At first glance, Judiciary Law § 475 seems to indicate that petitioner should be allowed to enforce his charging lien against the funds collected by the Support Collection Unit. However, case law and public policy mandates the exemption of certain types of personal property from the enforcement of an attorney’s charging lien. As noted by the parties herein, there exists an absence of any specific legal authority to address the issue of the exemption of child support from the enforcement of an attorney’s charging lien. However, alimony has been specifically exempted from the enforcement of an attorney’s lien. (See, CPLR 5205 [d] [3]; Turner v Woolworth, 221 NY 425 [1917]; Wagner v Wagner, 143 Misc 2d 1044 [Sup Ct, Monroe County 1989].) The Court of Appeals in Woolworth clearly established that public policy dictates the prohibition against creditors from collecting monies from awards of alimony. The Court wrote that “The purpose of alimony is support * * * In such circumstances, equity, confining the fund to the purposes of its creation, declines to *485 charge it with liens which would absorb and consume it.” (Turner v Woolworth, 221 NY 425, 429-430.) This strong public policy was formerly codified in sections 687-a (8) (d); 792 (d) and 793 of the Civil Practice Act. Currently, this public policy mandate is clearly expressed in CPLR 5205 (d) (3).
Petitioner correctly argued that the instant proceeding is not a matrimonial action and the funds were not derived from alimony payments. However, the court does not accept petitioner’s argument that the public policy considerations which exempt alimony from the enforcement of an attorney’s lien do not apply to awards of child support. This court finds that public policy dictates the protection of child support payments from the enforcement of attorneys’ liens. Similar to alimony, the purpose of child support is to assure that minor children are adequately supported.
The New York State Legislature has clearly expressed that both parents have a duty to support their children. (Family Ct Act § 413 [1] [a].) Child support is defined as “a sum to be paid pursuant to court order or decree by either or both parents or pursuant to a valid agreement between the parties for care, maintenance and education of any unemancipated child under the age of twenty-one years.” (Family Ct Act § 413 [1] [b] [2].) Although it is the custodial parent who actually receives funds from the noncustodial parent, both parents are obligated by law to support the child. In fact, calculation of child support under the child support guidelines requires the court to calculate the appropriate child support percentages on the combined income of both parents. (Family Ct Act § 413 [1] [c].)
Because both parents have an obligation to support their children, the child support amount awarded to the custodial parent is not merely for reimbursement of the custodial parent as suggested by the petitioner, instead, the funds are awarded to the custodial parent in trust for the support and maintenance of the minor children. (See, for example, Richards v Richards, 86 AD2d 771 [4th Dept 1982]; Matter of Parker v Stage, 43 NY2d 128 [1977].) Case law has reflected the concept that the custodial parent does not have an ownership interest in the funds. In Richards, for example, the court refused to award the custodial parent arrears for child support due under a separation agreement during a period when the parties’ child had neither received nor sought support from either parent. The court reasoned that “ ‘Although the statutory obligation of parents to support a child * * * is stated in mandatory terms, a child who voluntarily and without good cause abandons the *486 parents’ home forfeits her right to support.’ ” (Richards v Richards, at 771.) The court noted that it was not the child who was seeking the arrears, but instead, it was the mother who had not supported the child for a period of time. (Richards v Richards, at 772.) Clearly, once a minor child has been emancipated, the duty of both parents to support the child terminates.
This court concludes that the child support payments collected by the Support Collection Unit are funds for the exclusive benefit of the infant child. Although the custodial parent and/or the Support Collection Unit receive the money, an ownership interest in the funds is not obtained by the custodial parent or the Support Collection Unit. (See, Sue Davidson, P. C. v Naranjo, 904 P2d 354 [Wyo 1995]; Law Office of Tony Center v Baker, 185 Ga App 809, 366 SE2d 167.) In the instant matter, respondent Placencia, as the child’s custodial parent, stands as a trustee of the funds, administering money as she deems appropriate for the needs and welfare of the child. As the Georgia Court of Appeals wrote:
“ ‘When alimony is awarded for the support of minor children, the mother acquires no interest in the funds, and when they are paid to her she is a mere trustee charged with the duty of seeing that they are applied solely for the benefit of the children. She can not consent to a reduction or remission of the alimony, and ordinarily her conduct can not relieve the father of paying the same as directed by the court’ * * *
“ ‘[T]he mother has no power or authority to make a contract with an attorney at law whereby she agrees to pay him one-half of whatever sums he collects from the father by virtue of the decree. Such an agreement, being contrary to the policy of the law, is void, and a court of equity will not aid the attorney in attempting to require the mother to account to him for payments she has received from the father.’” (Law Office of Tony Center v Baker, 185 Ga App 809, 810, 366 SE2d 167, 168, supra.)
Consistent with the persuasive authority in Baker {supra), this court also concludes that it is repugnant to the public policy considerations in New York to allow the custodial parent to contract with an attorney to permit the payment of attorney fees from an award of child support. In this matter, the petitioner presented to the court a handwritten agreement dated September 17, 1999, purportedly between respondent Placencia and himself, in which the parties agreed to reduce the outstanding attorney fees owed from $16,025 to $10,000. *487 This agreement directed respondent Placencia to cooperate and sign any document to effectuate the agreement. Respondent Placencia also purportedly executed a durable general power of attorney and an assignment of funds to effectuate the payment of the outstanding attorney fees from the child support account. Analogous to Baker, this court will not assist an attorney attempting to collect attorney’s fees from an award of child support.
In addition, unlike alimony or maintenance payments, child support payments are not treated as income in the calculation of the custodial parent’s taxes, nor can the noncustodial spouse take a deduction for the support payments. This fact also implies that the custodial parent does not have an ownership interest in the child support funds. (Sue Davidson, P. C. v Naranjo, 904 P2d 354, 357, supra.) Since the custodial parent does not have a possessory interest in the child support funds, an attorney’s lien is not enforceable against the funds. Before any creditor, including an attorney, can attach a lien to a debtor’s property, the property must be owned by the judgment debtor. (Helmsley-Spear, Inc. v Winter, 74 AD2d 195 [1st Dept 1980].)
The New York State Legislature has indicated that unless the court deems an amount unnecessary for the support of a minor child, child support is exempted from creditors’ rights. CPLR 5205 (d) (3) exempts certain personal property from the satisfaction of a money judgment and provides that “payments pursuant to an award in a matrimonial action, for the support of a wife, where the wife is the judgment debtor, or for the support of a child, where the child is the judgment debtor; where the award was made by a court of the state, determination of the extent to which it is unnecessary shall be made by that court.” The language of CPLR 5205 (d) (3) also suggests that funds awarded for child support belong to the child. Although this section applies to matrimonial actions, the Legislature protects monies used for the support of minor children from the minor child’s debt. The Legislature clearly recognized a public policy consideration to protect child support payments from judgment creditors.
In addition, the Fourth Department has also reflected the public policy of preventing child support payments from being absorbed by a judgment creditor. In Schelter v Schelter (206 AD2d 865 [4th Dept 1994]), citing Levine v Levine (206 Misc 884), and Law Office of Tony Center v Baker (supra), the Court concluded that if the funds that were being held in escrow by *488 the defendant’s former attorney were treated as payments for child support, it would conclude that such payments would not be subject to an attorney’s retaining lien.
The petitioner’s reliance on Spinello (supra) is misplaced. The court in Spinello granted priority to the attorney’s charging lien over the ex-wife’s lien for past due child support and alimony against the available funds not created for the express purpose of benefiting the wife and children. (Spinello v Spinello, 70 Misc 2d, at 526.) Instead, however, the funds were derived from an arbitration award involving the respondent’s termination of his joint medical practice with a former partner. The court therein supported the policy that “[t]he attorney’s charging lien is a right which vests so that a lawyer who recovers money for his client will not be left uncompensated for his efforts.” (Spinello v Spinello, at 525.) The court clearly indicated that funds recovered on behalf of the father through the efforts of the attorney were not based on an action to support his wife and children. Unlike Spinello, the funds collected herein were for the exclusive benefit of the minor child. Petitioner’s attorney’s lien is based on a paternity action and the determination of child support. The child support funds collected by the Support Collection Unit were seized and correctly applied to the outstanding arrears of the delinquent father.
Based upon the public policy that protects an award of child support from a judgment creditor’s lien, this court concludes that consistent with the public policy in New York State, an attorney representing a custodial parent may not enforce an attorney’s lien against an award of child support. This court further finds that it is also against public policy for the custodial parent to enter into an agreement to allow payment of attorney fees to be collected from a child support award. Such agreement is void. (See, for example, Levine v Levine, supra.)
Accordingly, petitioner’s application for enforcement of the attorney’s lien against the child support funds in the possession of the Support Collection Unit is hereby denied. The Support Collection Unit does not have a legal duty to disburse any portion of the child support funds in its possession to an attorney asserting an attorney’s lien.
Counsel Fees and Sanction
Petitioner’s applications for counsel fees and sanctions are hereby denied.

 According to Support Collection Unit records, as of June 22, 1999, Mr. Deleon owed $108,421.73 in outstanding arrears. After providing a credit for the monies seized ($77,264.62), Mr. Deleon still had an outstanding balance of $31,157.11.