Vera M. HOLMES, Plaintiff,

v.

David F. WOOLEY, Defendant.

No. 01J–08–192.

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 29, 2001.
Decided: Nov. 2, 2001.

Vera M. Holmes, pro se, Bear.

Norman E. Levine, Esquire, Levine & Thompson, for Defendant.

Brenda L. Sammons, Esquire, Department of Justice Wilmington, for the Division of Child Support Enforcement.

## MEMORANDUM OPINION

SLIGHTS, J.

### I. INTRODUCTION

The issue before the Court is one of first impression in this State: whether a judg-

ment creditor, who happens to be a child support obligor, has the right to attach child support payments in order to satisfy a judgment entered against a judgment debtor, who is the child support obligee. Defendant, David F. Wooley ("Mr.Wooley"), has filed a Motion to Quash Attachment against Plaintiff, Vera M. Holmes ("Ms.Holmes"). For the reasons discussed below, Mr. Wooley's Motion is **GRANTED.**

## II. FACTS

Mr. Wooley and Ms. Holmes are the parents of two minor children, ages four and three. Both children reside with Mr. Wooley by Order of the Family Court of the State of Delaware dated February 12, 2001. Ms. Holmes is obligated by a Family Court order to pay monthly child support in the amount of $1905. A wage attachment in that amount has been issued to Ms. Holmes' employer, Hercules, Inc. ("Hercules").

Hercules has been forwarding the monthly child support payment directly to the Division of Child Support Enforcement ("DCSE") in accordance with the Court-ordered wage attachment. DCSE, designated by statute as the State Income Withholding Agency, distributes the child support funds to Mr. Wooley, who is the residential parent.[1]

On August 30, 2001, Ms. Holmes obtained a judgment in the Court of Chancery against Mr. Wooley in the amount of $38,014. The judgment has been recorded in this Court. Ms. Holmes has attempted to avail herself of various execution procedures found in Title 10 of the Delaware Code including efforts to garnish Mr. Wooley's wages and levy upon certain of his personal property. These attempts to collect funds duly owed to her have been unsuccessful. So, in an effort to "shake the tree," Ms. Holmes has caused this Court to issue a writ of attachment which names DCSE as garnishee.

The children's support funds now travel a circuitous route. Hercules garnishes Ms. Holmes' wages and forwards the funds to DCSE. In accordance with the writ of attachment, DCSE returns to Ms. Holmes all funds it receives from Hercules. Ms. Holmes, in turn, applies the funds she receives from DCSE against the balance owed to her by Mr. Wooley on the Chancery judgment.

Mr. Wooley has filed the instant Motion to Quash Attachment arguing that the child support received by DCSE and forwarded to him is not his property, but the property of the parties' minor children. He argues that he receives the funds as a fiduciary for the children. Mr. Wooley contends, therefore, that the funds are not subject to attachment in satisfaction of a debt owed by him. DCSE supports Mr. Wooley's Motion to Quash.

Ms. Holmes argues that because no Delaware statute expressly exempts child support from execution processes, the attachment is lawful. She urges the Court not to interfere with her efforts to collect a valid judgment from a recalcitrant debtor.

## III. DISCUSSION

### A. Standard for a Motion to Quash Attachment

■ Mr. Wooley has moved the Court to quash a writ previously issued by this Court in accordance with a lawful process. Accordingly, he carries the burden of establishing that the writ if (or as) executed will produce an unlawful result or otherwise offend the interests of justice.

---

1. 13 *Del.C.* § 513(b)(12).

## B. A Child Support Obligee's Interest in Child Support is Not Subject to Execution

### 1. Children Have an Equitable Interest in Child Support Payments

■ Mr. Wooley argues that the monies he receives as child support are for the benefit of his minor children, for whom he acts as a fiduciary. He asserts that he has no individual ownership interest in the funds. In support of his assertion, Mr. Wooley relies upon 13 *Del.C.* § 518 ("§ 518"), which states in pertinent part:

A person who receives funds from another person for the support of a child in his or her care is a fiduciary with respect to such funds and may be ordered by the Court to account for the expenditure and management of such funds on application by any payer of such funds for good cause shown.

■ The language of § 518 imposes a duty on the child support obligee to use child support monies for the benefit of the minor children. Explicit in this obligation is the understanding that the child support obligee acts as a fiduciary on behalf of the children. And clearly implicit in this fiduciary obligation is the notion that, although the child support obligee may have a legal interest in the child support funds, his or her interest in such funds is subordinate to the children's interest. It is an interest akin to a trustee's interest in the corpus of a trust.[2] Accordingly, the child support obligee does not have an unfettered right to use the child support money in any manner or for any purpose. The funds are meant to be used only for the support and benefit of the minor children.[3] As the intended beneficiaries of such funds, the minor children have an equitable interest in them.[4]

The Court cannot conceive of a scenario where a judgment debtor voluntarily could use child support funds to satisfy a judgment entered against him in his individual

---

2. Other jurisdictions have held that the custodial parent receiving child support is the trustee of such funds for the benefit of the minor children. The Supreme Court of Wyoming held that "[a] support payment is the children's money administered in trust by [the custodial parent] for their benefit." *Davidson v. Naranjo*, Wyo.Supr., 904 P.2d 354, 357 (1995)(citing *Cranston v. Cranston*, Wyo. Supr., 879 P.2d 345, 349 (1994)). The Supreme Court of New York, in holding that child support funds are exempt from the enforcement of an attorney's lien, stated: "[T]he child support payments collected by the support collection unit are funds for the exclusive benefit of the infant child. Although the custodial parent and/or the support collection unit receive the money, an ownership interest in the funds is not obtained by the custodial parent or the support collection unit. (citations omitted)....[T]he child's custodial parent stands as trustee of the funds, administering money as she deems appropriate for the needs and welfare of the child." *Shipman v. City of New York Support Collection Unit*, N.Y.Supr., 183 Misc.2d 478, 703 N.Y.S.2d 389 (2000). *See also Pickett v. Pickett*, Ind.Ct. App., 470 N.E.2d 751 (1984)(holding that a custodial parent is merely trustee of support payments and has no right to contract away benefits of trust).

3. Indeed, the Family Court is authorized to oversee the disbursement of such funds should the need arise. *See G.W.F. v. G.P.F.*, Del.Supr., 271 A.2d 38, 40 (1970)("...if the amounts paid for support of the minor children are in fact going astray and not being used for their support, the court can control the manner of disbursement and accounting.").

4. *See Hamilton v. Morning*, Del.Fam., No. CK88–3102, 95–16750, 1997 WL 295686, Nicholas, J. (April 4, 1997)(holding that the right created by the Delaware child support statute is a right to support belonging to the child). *See also Hall v. Hall–Stradley*, Colo. Ct.App., 776 P.2d 1166 (1989)(holding that the right to support belongs to the child and that the beneficial owner of child support payments is the child, not the custodial parent).

capacity and still remain true to his fiduciary duty to his children.[5] If the judgment debtor could not voluntarily apply child support funds to satisfy his debt, the Court is hard-pressed to conclude that a judgment creditor can compel the judgment debtor to do so.

Apparently, the Internal Revenue Service agrees with the Court's conclusion that child support payments are not the property of the parent-obligee. In support of the proposition that the custodial parent does not have an unencumbered ownership interest in child support payments, courts have been persuaded by the fact that child support payments are not treated as income for the custodial parent and cannot be deducted by the non-custodial parent for tax purposes.[6] Alimony payments, on the other hand, are treated as income for the obligee and are tax deductible for the obligor.[7]

Based on the foregoing, the Court concludes that child support funds are not the property of the child support obligee, but rather are held by the obligee for the benefit of the children for whom the funds are designated.

### 2. Child Support Payments Cannot Be Attached

■■■■ Attachment is a statutory action at law that enables a creditor to levy on the property of his debtor to satisfy a debt.[8] The right of attachment is not absolute, however. For instance, "a creditor cannot have his debt satisfied out of property held in trust for another, no matter how completely his debtor may have exercised ownership over it...."[9] "Nor can a creditor of a trustee garnish the trust funds for the debt of the trustee, even where the trust funds have been mingled with the trustee's own funds...."[10]

The Court already has concluded that the child support obligee receives child support funds as a fiduciary to be used only on behalf of his/her children. Thus, even though the funds ultimately may be mingled with the child support obligee's own funds, a judgment creditor may not attach the child support funds because they don't belong to the judgment debtor.

### 3. Public Policy Does Not Allow Child Support Funds to Be Subject to a Writ of Attachment

■■■■ In the context of child support matters, Delaware courts traditionally have recognized "an overriding public concern for the protection and promotion of a child's interest."[11] The Delaware Supreme Court has stated that the obligation to support children is a parent's first priority.[12] Indeed, "[this] paramount obligation

---

**5.** Perhaps if the essentials of life depended upon satisfaction of the judgment, e.g. to avoid foreclosure on a defaulted mortgage, the judgment debtor could square the expenditure of child support funds with his fiduciary duty because maintenance of the family home under the circumstances is in the best interests of the children.

**6.** See Shipman, 183 Misc.2d at 487, 703 N.Y.S.2d 389; Davidson, 904 P.2d at 357.

**7.** See I.R.C. § 61(a)(8); I.R.C. § 215; 30 Del.C. § 1105.

**8.** Computer Sciences Corporation v. Sci–Tek, Inc., Del.Super., 367 A.2d 658, 660 (1976) (citations omitted).

**9.** 6 Am.Jur.2d, Attachment & Garnishment, § 193 (1999).

**10.** Id. See also II Woolley, Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware, § 1029 (reprinted 1985).

**11.** Solis v. Tea, Del.Supr., 468 A.2d 1276, 1282 (1983).

**12.** DCSE ex rel. Harper v. Barrows, Del.Supr., 570 A.2d 1180, 1185 (1990).

limits a parent's ability to retain assets." [13] It comes as no surprise, then, that Delaware's child support formula provides: "where [the] support obligor has inadequate income to meet his support obligations but does have assets convertible to cash, he will be required to convert all or some portion of said assets to cash for payment of support." [14]

Not only have our courts recognized the paramount importance of the child support obligation, they have demonstrated their commitment to upholding the child's interest in support payments by suspending basic principles of contract law in favor of protecting the overriding right to support. Thus, while the Family Court will apply basic tenets of contract construction when interpreting and enforcing private agreements regarding alimony and spousal support [15], it will ignore private agreements regarding child support unless it is satisfied that the agreements promote the "best interest of the child." [16] "[I]t is only when the parents' contract is consistent with the welfare and best interests of the child that the agreement for support may be given controlling effect." [17]

Moreover, Delaware courts consistently reject traditional equitable defenses such as laches and estoppel in child support cases because "a claim for child support is an obligation firmly grounded in policy." [18] In rejecting a defense of laches,

for instance, the Family Court has stated "[c]hild support [ ] is a unique and special responsibility and obligation. A parent's contractual obligation for child support can be enforced at any time." [19]

The Court concludes that the attachment of child support monies to satisfy a debt owed by the parent obligee is contrary to the public policy of this State, because it is not in the best interest of the minor children to allow such funds to be diverted from their intended use to satisfy a debt of the parent. To allow a judgment creditor to attach child support payments as a means of satisfying a debt would deprive the minor children of their maintenance and support. The Court's conclusion is supported by an ample body of case law that demonstrates the extraordinary efforts undertaken by the courts of this State to protect a child's right to financial support from his or her parents.

Other jurisdictions have addressed the right of a creditor to garnish support payments to satisfy a debt and have concluded that such a practice would offend public policy. For example, the Colorado Court of Appeals held that a parent who owes a duty of child support may not offset that obligation against a personal judgment he or she has against the custodial parent. [20] The Court based its decision, in part, upon its determination that such an intrusion upon the child's right to support violated

13. *Id.* citing *R.T. v. R.T.*, Del.Supr., 494 A.2d 150, 153 (1985).

14. *Emsley v. Emsley*, Del.Fam., 467 A.2d 700, 703 (1983).

15. *Rockwell v. Rockwell*, Del.Supr., 681 A.2d 1017 (1996).

16. *Solis*, 468 A.2d at 1282("contracting parties may not 'bargain away' support responsibilities to the detriment of their minor child").

17. *Id.* at 1283 (citations omitted).

18. *See e.g. Cubbler v. Fortucci*, Del.Fam., File No. D–2289, Poppiti, J. (Sept. 15, 1981). *See also Robbie G.D. v. Susan L.D.*, Del.Fam., File No. CN99–06216, Crowell, J. (April 4, 2000); *K.G. v. S.G.*, Del.Fam., File No. CN89–7321, Kuhn, J. (April 20, 2001).

19. *Channell v. Channell*, Del.Fam., File No. CN90–7417, Conner, J. (Oct. 30, 1997).

20. *Hall v. Hall–Stradley*, Colo.Ct.App., 776 P.2d 1166 (1989).

public policy.[21] A later case from the same court held that "a setoff against arrearages may be appropriate if, as here, it is established that no harm will result to the interests of the children."[22] No such showing has been made here.

▬▬▬ While Ms. Holmes correctly points out that no Delaware statute specifically exempts child support funds from attachment[23], she ignores the purpose and intent of the exemption laws. When construing exemptions, one must "[bear] in mind the legislative policy that induced their being."[24] When the legislature passes an exemption statute, it is reasonable for the Court to conclude that it did so "to afford families some modicum of protection from the impact of an execution or levy which might otherwise cast them into utter impecuniosity."[25] Exemptions are privileges granted by law on public policy grounds.[26] Indeed, the Delaware Supreme Court has stated that "the obvious purpose [of exemption statutes] is to protect a debtor and the debtor's family."[27]

With a keen appreciation of the purpose of exemption statutes, the Court is simply unwilling to accept Ms. Holmes' deductive process, i.e., because the General Assembly specifically has declined to exempt child support payments from attachment, *ipso jure* they are not exempted from attachment. The circumstances presented to the Court in this case are as unique as they are remarkable. That a natural parent would seek to deprive his or her children of available financial support—a truly repugnant notion—apparently is a reality not yet appreciated by the General Assembly. Nevertheless, the Court has detected nothing in Titles 10 or 13 of the Delaware Code that is inconsistent with a conclusion patently obvious to this Court: the attachment of child support funds by any judgment creditor of a parent offends Delaware public policy. On the contrary, the Court is satisfied that the exemption of child support from attachment processes is consistent with Delaware's statutory schemes for the collection of judgments and the protection of our children.

## IV. CONCLUSION

This Court finds that minor children, for whose support and maintenance child support is ordered, have a beneficial interest in child support monies. As such, child support is not subject to attachment in satisfaction of a judgment against a parent. In addition, this Court finds that the garnishment and attachment of child support monies to satisfy a judgment against the parent obligee is contrary to the public policy of this State. Accordingly, Mr. Wooley's Motion to Quash Attachment is **GRANTED.**

**IT IS SO ORDERED.**

**21.** *Id.* at 1167.

**22.** *In re the Marriage of Wisdom,* Colo.Ct.App., 833 P.2d 884, 887 (1992).

**23.** *See* 10 *Del.C.* §§ 4901–5095.

**24.** *Redick v. O'Brien,* N.J.Super., 191 N.J.Super. 614, 468 A.2d 735, 736 (1983)(holding that debtor cannot claim a personal property exemption outlined in statute when an execution is effected to satisfy a judgment arising from debtor's child support obligation).

**25.** *Id.*

**26.** *D'Avignon v. Graham,* N.M.Ct.App., 113 N.M. 129, 823 P.2d 929, 932 (1991).

**27.** *Wilmington Trust Co. v. Barron,* Del.Supr., 470 A.2d 257, 264 (1983).