[791 NYS2d 553]

In the Matter of GILBERT L. BALANOFF, Appellant, v PHILIP NIOSI et al., Respondents.

Second Department, February 7, 2005

APPEARANCES OF COUNSEL

*Gilbert L. Balanoff*, Mineola, appellant pro se.

*Wachtel & Masyr, LLP*, New York City (*Evan Weintraub* of counsel), for respondents.

**OPINION OF THE COURT**

CRANE, J.

Introduction

This appeal presents an opportunity for this Court to clarify the procedure for enforcing a judgment against an award of maintenance. This procedure differs from those applicable to other types of collection efforts because it harmonizes the judgment creditor's right to reach these funds with the public policy of protecting the recipients of such funds, though they be judgment debtors.

Factual and Procedural Background

The respondent Philip Niosi and his former wife, Danise Ditroia, were divorced pursuant to a judgment entered in the Supreme Court, Suffolk County. The judgment of divorce incorporated the terms of a duly-binding separation agreement which provided, inter alia, that Niosi would make monthly maintenance payments to Ditroia. Upon Niosi's failure to make these payments, the Supreme Court, Suffolk County, entered an income execution for support directing Niosi's employer, the respondent Prospective Computer Analysts, Inc. (hereinafter Prospective Computer), to deduct the maintenance payments from Niosi's income and to pay them over to Ditroia on a monthly basis.

Subsequently, in July 2002, the petitioner obtained a judgment against Ditroia on her default in Supreme Court, Nassau County, for unpaid legal services. In an attempt to satisfy the judgment, the petitioner served the respondents, Niosi and Prospective Computer, with restraining notices alleging that the respondents were in possession of property in which the petitioner had an interest, to wit, Ditroia's monthly maintenance payments. When the respondents refused to pay the petitioner, he commenced this proceeding to enforce the

restraining notices in Supreme Court, Nassau County, on notice to Ditroia.

The Supreme Court held that the respondents did not violate the restraining notices because their payment of Ditroia's monthly maintenance was exempt from restraint pursuant to CPLR 5205 (d) (3). The court further stated that any determination of the extent to which the maintenance was not exempt should be made by the court that issued the award (i.e. the Supreme Court, Suffolk County) . On this basis, the court, inter alia, dismissed the petition and vacated the previously-issued restraining notices.

On appeal, the petitioner argues that the Supreme Court, Nassau County, should have enforced the restraining notices in the proceeding because Ditroia failed to claim her exemption and prove the amount of her reasonable requirements upon notice of this proceeding. Under the circumstances of this case, the petitioner's contention is lacking in merit. A review of the relevant enforcement statutes contained in CPLR article 52, in conjunction with an examination of their legislative history, reveals that the petitioner took the wrong initial steps in his attempt to enforce his money judgment against Ditroia's award of maintenance. As discussed more fully below, Ditroia's burden to claim and prove her exemption would not be triggered until the petitioner submits a proper application for an installment payment order to reach the amount of Ditroia's maintenance in excess of her reasonable requirements.

Exempt Property

In general, CPLR 5205 enumerates the kinds of personal property that are exempt from application to the satisfaction of money judgments. For instance, CPLR 5205 (a) provides exemptions for personal tangible goods, such as stoves kept in the judgment debtor's dwelling house (see CPLR 5205 [a] [1]), the family bible and family pictures (see CPLR 5205 [a] [2]), and "necessary working tools . . . not exceeding six hundred dollars in value" (CPLR 5205 [a] [7]). CPLR 5205 (d) further provides that certain types of income are exempt from application to the satisfaction of a money judgment, including, inter alia, 90% of a judgment debtor's earnings for personal services (see CPLR 5205 [d] [2]), and payments made pursuant to an award in a matrimonial action for the support of a former wife, where the former wife is a judgment debtor (see CPLR 5205 [d] [3]). These provisions derive from various sections of the Civil Practice Act (see Legislative Studies and Reports, McKinney's Cons Laws of NY, Book 7B, CPLR 5205, at 136-138 [1997]).

Burden of Proving an Exemption

Traditionally, the judgment debtor bears the burden of claiming and proving the applicability of an exemption, but only when the exempt status of the property is unclear to the judgment creditor or a levying officer (*see Matter of Livingston*, 30 Misc 2d 71, 75-76 [1961], *affd* 14 AD2d 264 [1961]; *Wilcox v Howe*, 12 NYS 783, 783-785 [1891]; 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5205.06, at 52-116). For example, the debtor has the burden of claiming and proving the applicability of an exemption under CPLR 5205 (a) (7) (former Civ Prac Act § 665 [7] [necessary working tools and implements]; *see e.g. Gilewicz v Goldberg*, 69 App Div 438, 439 [1902];[1] *Tuckman v Hayward*, 26 Misc 2d 45, 46 [1960]; *Wilcox v Howe, supra*). The judgment debtor has the burden of proving this exemption because he or she possesses the facts required to prove that the items are "necessary working tools" for his or her profession, which do not exceed $600 in value (*see* CPLR 5205 [a] [7]; 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5205.06, *supra*). Neither the judgment creditor nor a levying officer may have knowledge of what kinds of tools a judgment debtor needs for his or her profession, nor how much they are worth (*see Wilcox v Howe, supra*). Accordingly, due to the qualified nature of the exemption, the judgment debtor has to claim and prove its applicability or risk waiving the exemption (*see Gilewicz v Goldberg, supra* at 439; *Wilcox v Howe, supra*; 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5205.06, *supra*).

Similarly, when a judgment creditor seeks to restrain funds in a judgment debtor's bank account, the judgment debtor has the burden of claiming and proving the applicability of an exemption because only he or she knows the source of the funds which may qualify for an exemption (*see Matter of Cole v Goldberger, Pedersen & Hochron*, 95 Misc 2d 720, 730-731 [1978]; *see also Frasca v General Motors Corp., Cadillac Motor Div.*, 228 AD2d 474 [1996]; *Matter of Lesiak v Beneficial Commercial Corp.*, 101 AD2d 672, 672-673 [1984]; *Matter of Sverd v Mostel*, 283 App Div 128, 130-131 [1953]; *Freeman v Freeman*, 119 Misc 2d 775 [1983]). By contrast, if property or funds are easily identifiable as exempt, the judgment debtor does not have the burden of claiming the exemption in order to benefit from its application (*see Matter of Livingston, supra* at 75-76; *Wilcox v Howe, supra*; 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5205.06, *supra*).

---

**1.** *Gilewicz v Goldberg (supra)* was decided under Code of Civil Procedure § 1391 which was the predecessor of Civil Practice Act § 665 (7).

In the case at bar, it is clear that the petitioner sought to satisfy his money judgment with maintenance payments awarded for Ditroia's support in a matrimonial action. Indeed, the respondents were directed to pay Ditroia pursuant to an "income execution for support" entered in the Supreme Court, Suffolk County. The petitioner and the respondents knew the nature of these payments at the time the restraining notices were served. The restraining notices expressly stated that they applied to "Maintenance (alimony) payments." Moreover, in his petition, the petitioner acknowledged that he went through the file in the matrimonial action prior to serving the restraining notices. Accordingly, the exempt nature of Ditroia's mainte-nance payments was self-evident from the start (see CPLR 5205 [d] [3]).

Moreover, unlike funds in a bank account or personal goods subject to a monetary limitation, the exemption for mainte-nance under CPLR 5205 (d) (3) is only qualified by a condition subsequent dependent upon an application to the court. Like salary, wages, and other forms of income, an award of support in a matrimonial action is exempt "except such part *as a court determines* to be unnecessary for the reasonable requirements of the judgment debtor and his dependents" (CPLR 5205 [d] [emphasis added]). While it has generally been held that the judgment debtor bears the burden of proving his or her reason-able requirements (see *Zadar Constr. & Woodworking v Charter Woodworking Corp.*, 158 AD2d 454 [1990]; *Matter of Olson v Ol-son*, 275 App Div 60, 64 [1949]; *Camphill Special Schools v Prentice*, 126 Misc 2d 707, 708 [1984]; *Matter of Dickens v Direc-tor of Fin. of City of N.Y.*, 45 Misc 2d 882, 883 [1965]; *Matter of Industrial Bank of Commerce v Kelly*, 28 Misc 2d 889, 890 [1961]), the judgment creditor bears the initial burden of tender-ing and framing the issue upon his or her own motion (see *Mat-ter of Olson v Olson, supra* at 62-64; *Matter of Dickens v Direc-tor of Fin. of City of N.Y., supra* at 883). The petitioner in the instant case did not make the appropriate application.

CPLR 5226: The Installment Payment Order

The normal device for reaching income in excess of the debtor's reasonable requirements is the installment payment order pursuant to CPLR 5226, not the restraining notice to which the petitioner resorted (see Siegel, Practice Commentar-ies, McKinney's Cons Laws of NY, Book 7B, CPLR C5205:2, at 135-136; 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5205.28, at 52-150). CPLR 5226 provides that, upon motion of the judg-

ment creditor, the court shall order the judgment debtor to make specified installment payments to the judgment creditor where it is shown that the judgment debtor is "receiving or will receive money from any source" (CPLR 5226). In fixing the amount of the payments, the court "shall take into consideration the reasonable requirements of the judgment debtor" (CPLR 5226). The petitioner in the instant case did not use this procedure before serving his restraining notices and seeking Ditroia's maintenance directly from its third-party sources. However, a review of the legislative history of both CPLR 5226 and CPLR 5205 (d) (3) reveals that he was required to do so.

Legislative History of the Maintenance Exemption

Prior to 1941, there was no statute expressly exempting alimony or, as it is now called, maintenance (*see* Domestic Relations Law § 236 [B]; Scheinkman, Practice Commentaries, McKinney's Cons Law of NY, Book 14, Domestic Relations Law § 236, at 206) from the reach of a wife's creditors (*see* 7th Ann Report of NY Jud Council, at 345 [1941]). Despite the lack of a statute, the courts accorded a common-law exemption to alimony on the theory that it was a "specific fund provided for the specific purpose of the wife's support and that it cannot be diverted from that purpose" (7th Ann Report of NY Jud Council, *supra,* citing *Romaine v Chauncey,* 129 NY 566 [1892]). This common-law exemption clearly was available where the creditor's claim against the wife arose before she was awarded the alimony (*see Romaine v Chauncey, supra* at 569-570). By contrast, the courts began to recognize that the creditor had available "some remedy against the alimony" when the claim arose after the award was made to the wife and where the claim was based upon the furnishing of necessaries to the wife (*see* 7th Ann Report of NY Jud Council, *supra,* citing *Baskin & Co. v Howe,* 225 App Div 553, 557 [1929]; *Faversham v Faversham,* 161 App Div 521, 523 [1914]; *West v Washburn,* 153 App Div 460, 462-463 [1912]; *Matter of Bolles,* 78 App Div 180, 181 [1903]; *Matter of Tappe, Inc. v Battelle,* 140 Misc 49 [1931]). However, under these circumstances a "conflict of opinion" arose with respect to how much of the wife's alimony could be reached by the creditor (*see* 7th Ann Report of NY Jud Council, *supra* at 345-346). Due to the lack of any statutory standards, the procedure for seizing alimony and the allowable extent of such seizure were unclear (*id.*).

In order to eliminate the "great deal of confusion regarding the status of alimony," the Judicial Council proposed certain

amendments to the Civil Practice Act in 1941 (*id*. at 346). At that time the Civil Practice Act contained a number of articles addressing the various enforcement procedures available to a judgment creditor. For instance, articles 42 and 43 addressed the procedures for execution and levy (*see* Civ Prac Act § 635 *et seq.*), and article 45 outlined the procedures for enforcement through supplementary proceedings (*see* Civ Prac Act § 773 *et seq.*). Unlike the procedures for execution and levy, a judgment creditor's enforcement of a money judgment through supplementary proceedings required him or her to obtain a court order to reach the debtor's property (*see* Civ Prac Act §§ 793, 794, 795). In 1941, the Legislature addressed the issue of alimony by amending sections 792 and 793 as contained in Civil Practice Act article 45, which dealt with supplementary proceedings. The amendment clarified that alimony was generally exempt from seizure, but subject to a creditor's application to satisfy his or her judgment in supplementary proceedings (*see* 7th Ann Report of NY Jud Council, *supra* at 345-346).

Specifically, Civil Practice Act § 792 (d), as amended in 1941 (L 1941, ch 694), provided that a judgment creditor was not authorized to seize or interfere with

> "moneys payable pursuant to the direction of a judgment rendered or an order made in a matrimonial action, for the support of the wife, where the wife is the judgment debtor, *except to the extent and in the manner provided in section seven hundred and ninety-three of this act upon application of a judgment creditor of the wife*" (Civ Prac Act § 792 [d] [emphasis added]).

In turn, Civil Practice Act § 793, entitled "Installment payments by debtors," provided in relevant part that

> "the court may order the judgment debtor to pay to the judgment creditor or apply on the judgment, in installments, such portion of his income, however or whenever earned or acquired, *as the court may deem proper*, after due regard for the reasonable requirements of the judgment debtor and his family."

Accordingly, the clear terms of the Civil Practice Act, as amended in 1941, required a judgment creditor to apply for a section 793 installment payment order in order to reach alimony awards in excess of a judgment debtor's reasonable requirements. The Judicial Council expressly stated that this amend-

ment would "accord a reasonable remedy to creditors which should not prove unduly oppressive for the wife" (7th Ann Report of NY Jud Council, *supra* at 346). Thus, Civil Practice Act § 792 (d) and § 793 served the purpose of protecting recipients of alimony while providing creditors with an opportunity to enforce their judgments against such funds.

Subsequently, in 1952 the Law Revision Commission published the results of a thorough study of the Civil Practice Act and the various enforcement mechanisms contained in, inter alia, articles 42, 43 and 45 (*see* 1952 Report of NY Law Rev Commn, at 373-424). The purpose of the study was to examine the laws regarding enforcement of money judgments in order to determine the feasibility of providing for a direct levy upon certain intangible assets (*id.* at 374). Until that time, direct levy and execution were not ordinarily available for intangible debts and earnings (*id.* at 373, 386-387). Rather, the judgment creditor had to resort to the Civil Practice Act provisions for supplementary proceedings in article 45 (*id.* at 373-374, 386-387). The Law Revision Commission was seeking to streamline the process of reaching intangible assets (*id.*). Notably, it stated that alimony was the kind of debt that could not "be levied on by virtue of an execution" (*id.* at 386). It could only be reached through supplementary proceedings, and even then, the judgment creditor was "limited to such sums as the court might grant him under section 793 of the Civil Practice Act [installment payment orders]" (*id.* at 386 n 107).

Following the 1952 study of the Law Revision Commission, section 687-a was added that same year to the Civil Practice Act in an attempt to provide for an expanded levy and execution upon intangible assets. Notably, section 687-a (8) (d) stated that this section did not authorize seizure of "moneys payable pursuant to the direction of a judgment rendered or an order made in a matrimonial action, for the support of the wife, where the wife is the judgment debtor." Accordingly, even after this 1952 round of amendments to the Civil Practice Act, alimony could only be reached via court order in supplementary proceedings.

About a decade later, the procedures for enforcing a money judgment, as formerly outlined in the Civil Practice Act, were replaced by the CPLR (*see* Siegel, Practice Commentary on Article 52, McKinney's Cons Laws of NY, Book 7B, at 51; Legislative Studies and Reports, McKinney's Cons Laws of NY, Book 7B, *supra* at 136-138). The distinct articles of the Civil Practice Act outlining the various enforcement procedures (i.e.

execution and supplementary proceedings) were consolidated into CPLR article 52 in an attempt to "eliminate some of the duality of procedure" in the Civil Practice Act (3d Prelim Report of Advisory Comm on Prac & Proc, 1959 NY Legis Doc No. 17, at 240). However, the procedure and directives of the Civil Practice Act were largely retained. In this respect, CPLR 5205 (d) (3), which provides for the current exemption for maintenance, derives from Civil Practice Act § 687-a (8) (d), § 792 (d) and § 793 (see 3d Prelim Report of Advisory Comm on Prac & Pro, 1959 NY Legis Doc No. 17, supra at 118; see also Historical and Statutory Notes, McKinney's Cons Laws of NY, Book 7B, at 131; Legislative Studies and Reports, McKinney's Cons Laws of NY, Book 7B, supra at 137-138). The Advisory Committee expressly noted that income provided by an award of support in a matrimonial action was not "available" under the Civil Practice Act without a judicial determination of the extent to which such payments were unnecessary pursuant to section 793 (the provision providing for installment payment orders) (see 3d Prelim Report of Advisory Comm on Prac & Proc, 1959 NY Legis Doc No. 17, supra at 118). It is noteworthy that the Advisory Committee stated that no change in substance was intended with the enactment of CPLR 5205 (d) (id. at 93, 118).

Accordingly, in order for the judgment creditor to reach matrimonial awards of support under the CPLR, the Legislature intended that he or she apply for a determination of the judgment debtor's reasonable requirements via the installment payment device, now codified in CPLR 5226 (see 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5205.06, supra). In fact, CPLR 5226 also derives, like CPLR 5205 (d) (3), from Civil Practice Act § 793 (see Historical and Statutory Notes, McKinney's Cons Laws of NY, Book 7B, CPLR 5226, at 282 [1997]). This common derivation from Civil Practice Act § 793 further demonstrates the legislative intent to require the judgment creditor to apply for this type of an order prior to allowing seizure of maintenance funds.

Judicial interpretation of the exemption for salary further demonstrates the correct method for seizing maintenance to satisfy a money judgment. Similar to support awards in matrimonial actions, a judgment debtor's salary was exempt under Civil Practice Act § 792 (c) to the extent that such earnings appeared to the court to be necessary for the judgment debtor's reasonable requirements. Courts interpreting Civil Practice Act § 792 (c) generally stated that it

"was never intended to authorize the enjoining of a third party from paying wages to a judgment debtor without a prior judicial determination of the amount of the earnings which the judgment creditor is entitled to reach. Not until after the court upon a proper application has fixed the amount of the debtor's income which should be applied to the payment of the creditor's judgment may it make an order under Section 793 directing the judgment debtor to make installment or other payments on account of the judgment" (*Matter of Gill v Schwartz*, 273 App Div 606, 608 [1948]; *see Yarmush v Cohen*, 184 Misc 41 [1945], *affd* 185 Misc 118 [1945]; *Matter of Chamberlain v Chamberlain*, 34 Misc 2d 1072, 1072-1073 [1962]; *cf. Matter of Olson v Olson, supra* at 62-64).

Thus, aside from the 10% income execution provided by Civil Practice Act § 684, a judgment creditor could only reach the rest of a judgment debtor's salary after some portion of it was judicially determined to be in excess of the debtor's reasonable requirements.

Significantly, it was the judgment creditor's burden to apply for such a determination regarding excess income and to tender the issue of reasonable requirements in such a proceeding (*see Matter of Olson v Olson, supra* at 62-64; *Matter of Dickens v Director of Fin. of City of N.Y., supra* at 883). Once the judgment debtor was called upon to defend on that issue, the burden shifted to the judgment debtor to prove his or her reasonable requirements (*see Matter of Olson v Olson, supra* at 62-64). At that point, the judgment debtor was not entitled to benefit from a calculated default (*id.*). Moreover, as long as the judgment creditor submitted a motion to reach *excess* salary or wages, upon notice to the judgment debtor, he or she was simultaneously entitled to proceed under Civil Practice Act § 794 (presently CPLR 5227) for an order directing a third-party employer to pay the excess income to the creditor himself (*see Matter of Olson v Olson, supra* at 63-64).

Required Procedure to Reach Maintenance for Satisfaction of Judgment

Under the current CPLR an application for an installment payment order remains the expedient for accessing exempt salary and wages (*see* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5205:2, *supra* at 136). Reinforcing this procedure, CPLR 5222 (a) prohibits a judgment

creditor from serving a restraining notice upon the judgment debtor's employer where the property sought to be restrained consists of wages or salary due or to become due to the judgment debtor (*see* CPLR 5222 [a]; *Silbert v Silbert*, 25 AD2d 570 [1966]). Such restraining notices are not given any binding effect (*see Silbert v Silbert, supra*). We hold that the same is true within the limited context of the instant case. Maintenance is a form of "income" that is exempt, just like 90% of a debtor's salary, and such clearly exempt income, when sought at its source, can only be divested of its exempt status upon proper application to a court for a determination of the judgment debtor's reasonable requirements (*see* CPLR 5205 [d]). This holding is mandated by the statutory analysis discussed above, but it also conforms to our prior treatment of maintenance as a generally exempt fund. For instance, we have consistently held that an attorney's charging lien does not attach to maintenance and alimony (*see Theroux v Theroux*, 145 AD2d 625, 627 [1988]; *Rosen v Rosen*, 97 AD2d 837 [1983], citing *Turner v Woolworth*, 221 NY 425 [1917]; *see also Shipman v City of New York Support Collection Unit*, 183 Misc 2d 478, 484-485 [2000]). In large part, this treatment of charging liens would be rendered nugatory if we allowed an attorney, at the same time, to serve an enforceable restraining notice upon the source of such funds without any previous application to fix the amount in excess of the debtor's reasonable requirements.

Here, the petitioner wrongly sought to satisfy his money judgment by serving the respondents with restraining notices prior to making any application for a judicial determination of Ditroia's reasonable requirements. Moreover, when the petitioner commenced the instant proceeding to enforce the restraining notices, he sought the entire amount of Ditroia's maintenance payments as they became due from the respondents. In his attempt to effectuate such complete restraint, the petition and the moving papers failed to specify any proposed amount of Ditroia's maintenance that was in excess of her reasonable requirements. Indeed, the petitioner's submissions did not mention this issue and he provided the court with scant information regarding Ditroia's background. However, until the petitioner properly tenders the issue of Ditroia's reasonable requirements to the court, the respondents are not required to obey the restraining notices, nor is the petitioner entitled to reach any portion of Ditroia's maintenance regardless of her default in these proceedings (*cf. Matter of Olson v Olson, supra; Matter of*

*Industrial Bank of Commerce v Kelly, supra*). Moreover, a determination of Ditroia's reasonable requirements can only be made by the court that originally awarded her the maintenance (*see* CPLR 5205 [d] [3]). That court—the Supreme Court, Suffolk County—has never made such a determination.[2]

Accordingly, in order to reach Ditroia's maintenance, the petitioner must make a motion for an installment payment order in the action in which he recovered judgment against Ditroia in the Supreme Court, Nassau County (*see* CPLR 5226; 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5226.10, at 52-420). He must raise the issue of Ditroia's reasonable requirements in his motion papers. Upon this motion, the Supreme Court, Nassau County, shall transfer the action to the Supreme Court, Suffolk County (the matrimonial court) for a determination of Ditroia's reasonable requirements pursuant to CPLR 5205 (d) (3) (*see* 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5205.28, *supra*; *see also* Civ Prac Act § 793). It should be noted that in those proceedings Ditroia bears the ultimate burden of establishing her reasonable requirements and she may not continue to benefit from her default[3] (*see Matter of Olson v Olson, supra; Matter of Industrial Bank of Commerce v Kelly, supra; Conlew, Inc. v Thompson*, 160 Misc 551, 553-554 [1936]). Once the Supreme Court, Suffolk County, determines the amount in excess of Ditroia's reasonable requirements, the petitioner may also secure an order against third parties, like the respondents, to access payment of Ditroia's surplus maintenance at its source (*see* CPLR 5227 [former Civ Prac Act § 794]; *Matter of Olson v Olson, supra* at 62-64; *Longyear v Robinson*, 155 NYS2d 93, 94-96 [1956]). In this respect, the Supreme Court, Suffolk County, has

---

**2.** Had the respondents unquestioningly complied with the restraining notices—which were served under the caption of the petitioner's fee collection action in Supreme Court, Nassau County—they would have been in potential violation of the income execution for support entered in the matrimonial action in the Supreme Court, Suffolk County. That income execution clearly stated that the respondents had to make monthly payments of maintenance directly to Ditroia. This potential conflict of jurisdiction was one of the reasons why the drafters of the Civil Practice Act required the matrimonial court to determine a debtor-wife's reasonable requirements (*see* 7th Ann Report of NY Jud Council, at 346-347, citing *Emigrant Indus. Sav. Bank v Lehman*, 151 Misc 444, 445-446 [1933]).

**3.** The circumstance of Ditroia's default in this proceeding avails the petitioner naught because he has not attempted to fix the amount of maintenance that is unnecessary for her reasonable requirements (*see* CPLR 5205 [d]; *cf. Matter of Olson v Olson, supra*), which he must do in the matrimonial court (*see* CPLR 5205 [d] [3]; n 2, *supra*).

broad power to regulate and modify the petitioner's use of the enforcement procedure (*see* CPLR 5240).

Conclusion

In light of the above, the Supreme Court correctly dismissed the petition and vacated the restraining notices as they sought to restrain clearly exempt funds at their source without any prior determination by the matrimonial court regarding Ditroia's reasonable requirements. However, the judgment is modified by adding a provision thereto stating that the dismissal of the petition and the vacatur of any previously-issued restraining order shall be without prejudice to the petitioner applying for an installment payment order pursuant to CPLR 5226 in the Supreme Court, Nassau County.

H. Miller, J.P., Santucci, Luciano and Spolzino, JJ., concur.

Ordered that the judgment is modified, on the law, by adding a provision thereto stating that the dismissal of the petition and the vacatur of any previously-issued restraining order shall be without prejudice to an application in the Supreme Court, Nassau County, for an installment payment order and, upon transfer to the Supreme Court, Suffolk County, a determination of the judgment debtor's reasonable requirements; as so modified, the judgment is affirmed, without costs or disbursements.