■ KENT M. SWIG, Appellant, v PROPERTIES ASSET MANAGEMENT SERVICES, LLC, Respondent. SQUARE MILE STRUCTURED DEBT (ONE) LLC et al., Respondents, v KENT M. SWIG, Appellant, et al., Respondents. [924 NYS2d 368]—

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered March 1, 2010, which denied the petition of judgment debtor Kent M. Swig for a declaration that respondent Properties Asset Management Services, LLC (PAMS) is not

restrained from making payments to him for sums due under an asset management agreement and for an order requiring PAMS to make 90% of such payments, and granted Square Mile's petition for an order directing Swig, PAMS and respondent Terra Holdings, LLC to turn over all distributions under the agreement payable to Swig, unanimously affirmed, without costs. Order, same court and Justice, entered May 14, 2010, which, insofar as appealed from, denied Swig's motion to renew, unanimously affirmed, without costs.

Swig, the judgment debtor, bore the burden of proving that the funds at issue were exempt as earnings for personal services under CPLR 5205 (d) (2) (*see Matter of Balanoff v Niosi*, 16 AD3d 53, 56 [2005]). His submissions failed to satisfy that burden.

The asset management agreement he submitted essentially contradicted his assertion that his income thereunder should be treated as earnings for his personal services. Under the asset management agreement he received three types of compensation: base salary, incentive compensation, and additional incentive compensation; his petition, as well as Square Mile's turnover petition, referenced all three of these forms of income. The agreement states that the base salary is to compensate *PAMS* and that to earn base salary PAMS is required to provide the active involvement of only two of its four managers, which did not necessarily require the performance of any services by Swig himself. His incentive compensation is based on the operating cash flow of Terra Holdings, and his additional incentive compensation is based on Terra's available cash from operations, and nothing in the record indicates that Swig's personal services were the chief factor in Terra's profits. Consequently, the terms of the agreement establish that no portion of Swig's compensation is necessarily identifiable as exempt under CPLR 5205 (d) (2), and nothing in Swig's petition supports a contrary conclusion beyond his conclusory assertion.

Nor do the submissions on Swig's renewal motion entitle him to relief. His submissions on the initial petition and cross petition could have made analytical distinctions among the three kinds of compensation due him under the asset management agreement, but they did not. His belated submission of W-2s on renewal, and his effort to claim an exemption for at least the portion of his compensation reported in that manner, were properly rejected.

Under more straightforward employment circumstances, the showing that an employee received a W-2 reporting his wages could be sufficient to shift the initial burden to the judgment

creditor to show why those funds were not exempt. Here, however, when the complex terms of the compensation provisions of the asset management agreement are considered, the fact that the structure of Swig's compensation includes a component called base salary that was reported in the context of W-2s is insufficient to deem those funds "easily identifiable as exempt" (*Matter of Balanoff*, 16 AD3d at 56). Nor does Swig's bare assertion in his affidavit that the salary was for his personal services establish those funds as exempt. Indeed, the assertion that his base salary had not been treated as covered by the restraining notices because it was actually paid by PAMS "through Brown Harris Stevens Residential Management, LLC" tends only to establish that the portion of Swig's compensation called his base salary was not a typical payment of wages.

As the motion court correctly reasoned, we need not reach the question of whether Swig's submissions established a need for a hearing as to whether he needed 90% of his salary to meet his basic financial obligations to his family. We note, however, that the initial petition did not even assert that the sums sought were necessary for the reasonable requirements of himself and his dependents; it merely asserted that he needed the funds to pay his legal counsel and his restructuring advisors and that the withholding of funds was interfering with his ability to manage his business. Only after this failure was pointed out in Square Mile's responsive turnover petition did Swig make the requisite assertion that the funds were needed for the support of himself and his dependents; even then, however, he offered nothing to substantiate the assertion. Therefore, no hearing on the issue would have been warranted in any event. Concur—Andrias, J.P., Saxe, Moskowitz, Richter and Manzanet-Daniels, JJ.