OPINION OF THE COURT
Jack L. Libert, J.
Decision after Trial
In each of the above captioned proceedings petitioner seeks a turnover of assets in satisfaction of a judgment debt. The two actions are related in many respects; but there is not complete identity of parties or issues. To avoid duplication of testimony the parties agreed to hold the hearings consecutively with the transcript of each hearing deemed incorporated by reference into the other.
*513 In the proceeding bearing index number 08594/14 (Smith & De Groat proceeding), petitioner seeks turnover of funds due from respondents Smith & De Groat, Inc. and Smith & Drake Realty, Corp. (collectively Smith & De Groat)* to the judgment debtor (Martin Schackner) or his alter egos, respondent MS Advisory Services, Inc. (MSA) and Landmark Real Estate Services, Inc. MSA and Landmark are wholly owned and controlled by Schackner. Because of this close identity of interest, the parties agreed by stipulation to treat MSA, Landmark and Martin Schackner as one and the same for purposes of these proceedings. Accordingly, the term “Schackner” as used in this decision shall include MSA, Landmark and Martin Schackner as the context requires.
In the proceeding bearing index number 12064/14 (Morgan Stanley proceeding), petitioner alleges that Schackner fraudulently conveyed funds to his wife, Karen Schackner. The funds at issue in the Morgan Stanley action are being held for the benefit of Karen by Morgan Stanley, Morgan Stanley Smith Barney LLC or Morgan Stanley & Co. LLC (collectively Morgan Stanley).
The hearings in connection with each of these proceedings were ordered by Justice Daniel Palmieri. His order dated January 8, 2015 (2015 NY Slip Op 30814RJ] [Sup Ct, NY County 2015]) (in connection with the Smith & De Groat proceeding), directed a hearing to determine whether the payments to Schackner were in consideration of “personal services” rendered by Martin Schackner. Justice Palmieri’s order of August 12, 2015 (in connection with the Morgan Stanley Proceeding) directed a hearing to determine: (i) whether full and fair consideration was received for the payments made to Karen; and (ii) whether a settlement agreement made during a bankruptcy proceeding (In re Schackner, 2013 WL 11263808 [Bankr ED NY, July 10, 2013, No. 08-73742-dte] [the Schack-ner bankruptcy]) bars recovery of the funds transferred to Karen.
The Smith & De Groat Proceeding
While indebted to petitioner, Schackner became entitled to receive certain payments from Smith & De Groat. Schackner claims that these payments were in consideration of personal *514 services rendered. Petitioner claims that the consideration was not for personal services. The following four paragraphs set forth this court’s factual findings.
Martin Schackner worked on behalf of Smith & De Groat as a property manager and real estate sales associate. Schackner held the title of “management director.” Schackner was not an employee of Smith & De Groat; rather, he was an independent contractor. Schackner did not receive a W-2 and no taxes were withheld from payments to him. The sums paid to Schackner were not based upon an hourly, weekly or annual wage. Smith & De Groat did not set Schackner’s schedule; he set it as the work required. Schackner held no job other than his position with Smith & De Groat.
Smith & De Groat contracted with the County of Nassau to manage two of the County’s real estate portfolios. One portfolio consisted of a veterans’ housing project. The other portfolio included vacant land, residential and commercial buildings. Under the terms of its contract with Nassau County, Smith & De Groat received a fixed percentage of rental income in exchange for providing the management services. In addition Smith & De Groat received commissions for leases it procured and a fixed percentage of construction costs for construction supervision on capital projects.
Smith & De Groat charged Schackner with the responsibility of managing these two portfolios. Schackner performed the duties customarily attendant to the role of property manager. He oversaw building personnel; hired contractors; directed repair and maintenance, including capital repairs, landscaping, and painting; supervised rent collections; and leased vacant space. Donna Marder (an employee of Smith & De Groat) assisted Schackner. Together Ms. Marder and Schackner kept the books of account of the properties. Based upon these books, Ms. Marder prepared quarterly invoices for submission to Nassau County. Smith & De Groat submitted these invoices quarterly. Upon receipt of payment, Smith & De Groat deducted expenses and paid 50% of the balance to Schackner.
Analysis
CPLR 5205 (d) (2) provides that 90% of funds received by a judgment debtor in consideration of personal services are exempt from “application to the satisfaction of a money judgment.” Payments for personal services are not limited to wages. (See 2015 NY Slip Op 30814[U] [Sup Ct, NY County 2015].) The debtor carries the burden of proving that the funds were *515 transferred in consideration of personal services. (Swig v Properties Asset Mgt. Servs., LLC, 85 AD3d 427 [1st Dept 2011].) In Swig, the judgment debtor received both base salary and “incentive compensation.” (Id. at 428.) The efforts of the debtor’s coworkers (as opposed to the exclusive work of the debtor) could affect the amount of the incentive compensation. The court held that the debtor carried the burden of proving that personal services rendered by him were the “chief factor” that generated the incentive compensation. (Id.)
In the Smith & De Groat proceeding, it was Schackner’s burden to prove that he provided personal services in consideration of the funds due him from Smith & De Groat. Schackner met that burden through his testimony, the testimony of Donna Marder and the terms of the contract between Schackner and Smith & De Groat. Although Schackner was not a W-2 “wage” employee of Smith & De Groat, he earned compensation from it in exchange for personal services rendered. The 90% income exemption under CPLR 5205 (d) (2) applies to the payments due Schackner from Smith & De Groat.
The Morgan Stanley Proceeding
Schackner transferred funds to Karen Schackner while the judgment debt was outstanding. These funds were deposited in Karen’s “Active Asset” and “401 (k)” accounts with Morgan Stanley. Petitioner asserts that these funds were fraudulently conveyed and seeks their turnover. Respondents assert that Karen gave full and fair consideration for the funds in question. In addition, respondents assert that a settlement agreement in the Schackner bankruptcy (the settlement agreement) bars petitioner from seeking turnover of payments to Karen.
Claims Prior to March 22, 2012
During the course of the Schackner bankruptcy, the trustee brought an adversary proceeding against Karen, alleging that Schackner fraudulently transferred funds to her. The proceeding was settled with the approval of Judge Eisenberg by her order dated March 22, 2012.
The settlement agreement states,
“2. Full Settlement and Satisfaction. The payment of the [monetary amount of the settlement] . . . shall be in full settlement and satisfaction of all claims of the Trustee as against Defendant in this adversary proceeding, it being the intent of the parties to fully and finally resolve all claims the *516 Trustee may have arising from this adversary proceeding against the Defendant.” (Emphasis supplied.)
“[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.” (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990].) If the terms are ambiguous, evidence extrinsic to the four corners of an agreement may be considered to ascertain the intent of the parties. (Scholastic, Inc. v Harris, 259 F3d 73, 82 [2d Cir 2001].)
During the hearing in connection with the Morgan Stanley proceeding, neither party offered any extrinsic evidence to shed light on the bar date intended by the settlement agreement. There being no evidence to the contrary, the date that Judge Eisenberg approved the settlement agreement (Mar. 22, 2012), bars all claims arising out of transfers made prior to that date. Claims arising out of transfers made after March 22, 2012 are not barred. Petitioner claims that in October of 2008, Schack-ner fraudulently conveyed the sum of $16,800 into Karen’s Active Asset account. This claim is time-barred.
Claims Subsequent to March 22, 2012
Respondents assert that Schackner received full and fair consideration for these payments by virtue of work and services performed by Karen. Petitioner asserts that all of these transfers lack consideration and are fraudulent conveyances. The following three paragraphs set forth this court’s factual findings in connection with the Morgan Stanley proceeding.
After March 22, 2012 Schackner transferred (or caused others to transfer) the following funds to Karen:
$20,000; August 2012
$7,500; December 2012
$6,987.61; March 2013
$7,556.33; May 2013
$6,986.13; December 2013
$13,166.52; and January 2014
$15,000 (two transfers in the sums of $8,000 and $7,000, respectively). February 2014
Throughout the period of time relevant to these proceedings Karen worked for the Suffolk County Legislature on a full-time basis. Prior to 2012 Karen spent substantial time as a part-time personal trainer — physical fitness instructor. In 2012 she reduced the amount of time spent at this avocation to one hour a week. At that time she began part-time work for Schackner. Karen’s duties included bookkeeping, driving Schackner, plan *517 ning one large special event, liaising with government agencies, dealing with resident problems and generally assisting Schackner with his property management responsibilities.
To determine the customary and reasonable salary for Karen’s job, Schackner made inquiry of other companies in the real estate industry. For the year 2012 Schackner fixed Karen’s annual compensation at $30,000. For the year 2013 Schackner increased Karen’s compensation to $40,000. In 2014, Schack-ner reduced Karen’s salary back to $30,000. Schackner did not offer any explanation for the large increase in 2013 or the subsequent reduction in 2014. Karen did not receive her pay on a regular basis; only “when cash was available.” The exception to that method of payment occurred in early 2014, when Schackner prepaid Karen’s salary for the entire year.
Analysis
Debtor and Creditor Law § 273-a provides that the transfer of funds without full and fair consideration while a debtor is insolvent is a fraudulent conveyance. In the event there is not full and fair consideration, the transfer is presumptively fraudulent (Polkowski v Mela, 143 AD2d 260 [2d Dept 1988]; Matter of Gafco, Inc. v H.D.S. Merchantile Corp., 47 Misc 2d 661 [1965]). The debtor bears the burden of rebutting that presumption by proving that full and fair consideration was given (Swig). Because of the outstanding judgment debt and the insolvency of Schackner, respondents bear the burden of proving full and fair consideration for any payments made by Schackner to Karen.
Schackner took reasonable steps to determine that the salary of $30,000 represented reasonable compensation for Karen’s part-time work. Schackner received the benefit of that work in full and fair consideration of Karen’s $30,000 annual salary. Because full consideration was received, transfers to Karen totaling $30,000 in 2012 and totaling $30,000 in 2013 are not fraudulent conveyances.
In contrast, respondents did not prove that there was consideration for the $10,000 salary increase in 2013 and the prepayment of Karen’s full annual salary in early 2014. Since respondents failed to prove consideration, the fraudulent conveyance presumption stands. The purported $10,000 salary increase and the $30,000 salary prepayment must be set aside.
*518 Conclusion
In connection with the Smith & De Groat proceeding (index No. 08594/14) petitioner’s request for the turnover of the funds is denied.
In connection with the Morgan Stanley proceeding (index No. 12064/14) petitioner’s request for the turnover of funds is granted to the limited extent that respondents are ordered to turn over to petitioner the sum of $40,000 within 30 days of service of a copy of this order and decision.

 The funds at issue in the Smith & De Groat proceeding are being held in escrow by Smith & De Groat’s attorneys, Quatela, Hargraves & Mari, PLLC. The firm is not a named party.