[894 NYS2d 398]

PETER F. EDELMAN, Appellant, v CLAUDIA POSTER, Respondent.

First Department, February 4, 2010

## APPEARANCES OF COUNSEL

*Peter F. Edelman*, New York City, appellant pro se.
*Howard Benjamin*, New York City, for respondent.

## OPINION OF THE COURT

ANDRIAS, J.

Pursuant to three separate written retainer agreements, the plaintiff-appellant, an attorney, represented the defendant-respondent in a matrimonial action and related appeals. In 2007, he commenced this action against plaintiff to recover, under theories of breach of contract and account stated, the sum of $155,934.05, plus interest, representing fees allegedly due for services rendered under the retainer agreements. Plaintiff also sought to recover the attorney's fees incurred in the prosecution of this action.

Plaintiff moved for summary judgment and defendant cross-moved to dismiss the complaint. Characterizing the issue before it as "one of pure contract interpretation," the Supreme Court dismissed the complaint (2009 NY Slip Op 30537[U], *5), finding that plaintiff breached the unambiguous retainer agreements by failing to give defendant 30 days' notice of her right to fee arbitration prior to commencing suit. We now consider whether in performing its analysis, the Supreme Court erred when it held that the retainer agreements may be construed without reference to the matrimonial rules governing retainers, fee disputes and arbitration in domestic relations matters that were in effect at the time the retainer agreements were executed.

The rules pertaining to retainers, fee disputes and arbitration in domestic relations matters, found at 22 NYCRR part 1400 (the matrimonial rules), were "promulgated to address abuses in the practice of matrimonial law and to protect the public" (*Julien v Machson*, 245 AD2d 122 [1997]). At the time the parties executed the retainer agreements in this case, March 10, 1997, August 17, 1999 and July 6, 2001, respectively, arbitration was governed by 22 NYCRR part 136, which provided for binding arbitration of fee disputes at the client's option (22 NYCRR 136.2), where the amount in dispute did not exceed $100,000

(22 NYCRR 136.4 [a]). An attorney's "utter failure to abide by these rules" precludes the attorney from collecting fees, even if the services were already rendered (*Julien v Machson, supra*; *see also Mulcahy v Mulcahy*, 285 AD2d 587 [2001]). Where there has been "substantial compliance" with the matrimonial rules, an attorney will be allowed to recover the fees owed for services rendered, but not yet paid for. (*See Flanagan v Flanagan*, 267 AD2d 80, 81 [1999]; *Markard v Markard*, 263 AD2d 470 [1999].)

In granting defendant's motion for summary judgment dismissing the complaint on the ground that the plaintiff attorney failed to give defendant notice of her right to arbitrate prior to commencing suit, the Supreme Court found that defendant was entitled to such notice "regardless of the existence of 22 NYCRR 136, *et seq*, and regardless of plaintiff's unexpressed intention that the arbitration be governed by that section" because the unambiguous "writing contains no reference at all to 22 NYCRR 136, *et seq*, no reference to a 30 day period to respond to a notice of a fee dispute [*sic*], and no mention of a jurisdictional limit to disputes that defendant may arbitrate" (2009 NY Slip Op 30537[U] at *6). The court further stated that even if the agreement was ambiguous, it must be construed against plaintiff as drafter.

Because we do not believe that the parties' retainer agreements may be interpreted without reference to the matrimonial rules in effect at the time they were entered, which governed the attorney-client relationship in domestic relations matters with respect to fee disputes and arbitration, we reverse the grant of summary judgment in defendant's favor and reinstate the complaint. A contrary result would do violence to the very rules we endeavor to enforce and penalize an attorney who complied in all respects with the matrimonial rules in effect at the time each retainer agreement was drafted and executed.

Under New York law, an enforceable contract requires mutual assent to its essential terms and conditions. If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract (*see Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d 88, 91 [1991]; *Mellen & Jayne, Inc. v AIM Promotions, Inc.*, 33 AD3d 676 [2006]). "[A] court will not order a party to submit to arbitration absent evidence of that party's unequivocal intent to arbitrate the relevant dispute and unless the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration" (*Primavera Labs. v Avon Prods.*, 297 AD2d 505, 505 [2002] [internal quotation marks and citations omitted]).

In the case before us, by agreement dated February 28, 1997 and executed March 10, 1997, plaintiff was retained by defendant to prosecute an action for divorce in *Poster v Poster*. The agreement provided in pertinent part:

> "While I seek to avoid any disputes concerning the payment of our fee, in the event such a dispute does arise, you have the right, at your election, to seek arbitration, the results of which are binding on both parties. *I shall advise you in writing by certified mail that you have 30 days from receipt of such notice in which to elect to resolve the dispute by arbitration, and I shall enclose a copy of the arbitration rules and a form for requesting arbitration.* If no action is pending and if you do not timely enforce your rights to enter into fee arbitration, I may commence legal proceedings against you to recover any unpaid fee" (emphasis added).

By agreement dated May 10, 1999 and executed August 17, 1999, and by agreement dated July 3, 2001 and executed July 6, 2001, plaintiff was also retained by defendant to represent her in appeals related to the divorce action. Each of these retainers included the same arbitration clause.

Attached to each of the three retainer agreements was a copy of a "Statement of Client's Rights and Responsibilities" which informed the client of what he or she is "entitled to by law or by custom." Consistent with the retainer agreement, the statement provides, among other things, that "[i]n the event of a fee dispute, you have the right to seek arbitration, the results of which are binding. *Your attorney will provide you with the necessary information regarding arbitration in the event of a fee dispute, or upon your request*" (emphasis added).

While these retainer agreements evidence a clear intent to give defendant the right to binding arbitration of fee disputes at her option, to be governed by arbitration rules to be provided by plaintiff, material terms are missing in that they do not specify what those rules are or identify the forum for the arbitration. However, there is no requirement that an agreement to arbitrate be encompassed in "a single comprehensive document" (5 NY Jur 2d, Arbitration and Award § 18; *see also American States Ins. Co. v Sorrell*, 258 AD2d 782, 783 [1999]), and where it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the

parties to their bargain (*166 Mamaroneck Ave.*, 78 NY2d at 91; *see also Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 483 [1989], *cert denied* 498 US 816 [1990] [before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear]; *Marshall Granger & Co., CPA's, P.C. v Sanossian & Sardis, LLP*, 15 AD3d 631, 632 [2005]).

The subject retainer agreements and statement of client's rights and responsibilities, read together, advise defendant of the rights to which she was "entitled to by law or by custom," including the right to arbitrate fee disputes, and reference arbitration rules to be provided by plaintiff upon a fee dispute or at defendant's request. Given this language, applying the principles of contract interpretation set forth above, there is an objective method to attach a sufficiently definite meaning to the arbitration clause and to supply the missing information as to the arbitration forum and governing rules, to wit, the matrimonial rules, which, pursuant to 22 NYCRR 1400.1, "apply to all attorneys who . . . undertake to represent a client in a claim, action or proceeding . . . for divorce."

An analysis of the retainer agreements demonstrates that they were drafted in accordance with the matrimonial rules. Pursuant to 22 NYCRR 1400.2, the attorney must provide "a prospective client with a statement of client's rights and responsibilities, in a form prescribed by the Appellate Divisions, at the initial conference and prior to the signing of a written retainer agreement." Here, a copy of that statement was undisputedly annexed to each retainer agreement.

Pursuant to 22 NYCRR 1400.3, the matrimonial attorney is required to "execute a written agreement with the client setting forth in plain language the terms of compensation and the nature of services to be rendered." Section 1400.3 further provides for the inclusion of certain information in the retainer agreement, including the amount of the advance retainer and what it covers, the client's right to cancel, the hourly rate of each person whose time may be charged to the client, and the disbursements not included in the fee. Each of these requirements is addressed in the subject retainer agreements.

Further, as to arbitration, 22 NYCRR 1400.3 provides: "13. Should a dispute arise concerning the attorney's fee, the client may seek arbitration; the attorney shall provide information concerning fee arbitration in the event of such dispute or upon the client's request."

Again, each of the retainer agreements and statement of client's rights and responsibilities conforms with 22 NYCRR 1400.3, which did not mandate that the applicable court rule governing the arbitration be expressly identified in the retainer agreement. It is worthy of note that in contrast, 22 NYCRR 1215.1 (b) (2), effective March 4, 2002, requires that the letter of engagement "where applicable, shall provide that the client may have a right to arbitrate fee disputes *under Part 137 of this Title*" (emphasis added). Significantly, the arbitration clause used by plaintiff substantially conformed with the Sample Retainer Agreement Forms then approved by the New York Chapter of the American Academy of Matrimonial Lawyers and the Family Law Section of the New York State Bar Association, two of the leading organizations dedicated to enforcing and enhancing professionalism in this often contentious area of law.

Applying the matrimonial rules, the complaint should not have been dismissed based on plaintiff's failure to provide defendant with an arbitration notice in advance of litigation. 22 NYCRR 1400.7, "Fee Arbitration" provides:

> "In the event of a fee dispute between attorney and client, the client may seek to resolve the dispute by arbitration pursuant to a fee arbitration program established and operated by the Chief Administrator of the Courts and subject to the approval of the justices of the Appellate Divisions."

Under 22 NYCRR part 136, a client could request arbitration pursuant to 22 NYCRR 136.5 (e) either in response to notice from the attorney pursuant to section 136.5 (a), upon consent pursuant to section 136.5 (d), or upon the client's own initiative.

Under 22 NYCRR 136.5 (a), where a fee dispute arises, the attorney must inform the client in writing that he or she has 30 days from receipt of the notice in which to elect to resolve the dispute by arbitration. The attorney must also include standard instructions developed by the Chief Administrator regarding the arbitration procedure, and a copy of a request for arbitration.

> "If the client does not file the request for arbitration within the 30-day period, the attorney may commence an action to recover the fee and the client no longer shall have the right to request arbitration pursuant to this Part with respect to the fee dispute at issue" (22 NYCRR 136.5 [b]).

"An attorney who institutes an action to recover a fee must allege in the complaint that the client received notice under this rule of his or her right to pursue arbitration and did not file a timely request for arbitration" (22 NYCRR 136.5 [c]).

While these provisions, which are consistent with the arbitration clause in the retainer agreement, impose a notice requirement, pursuant to 22 NYCRR 136.4, "Jurisdiction,"

> "(a) The arbitration program may not hear any fee dispute in which the amount in dispute is in excess of $ 100,000, including disbursements.

> "(b) The Administrative Judge may decline to accept or continue to arbitrate a dispute in which substantial legal questions are raised in addition to the basic fee dispute or with respect to which no attorney's services have been rendered for at least two years."

Accordingly, in the event of a fee dispute between a matrimonial attorney and client, under part 136 the client had the right to seek binding arbitration of the dispute *provided* that the amount in dispute was not in excess of $100,000.

Here, in accordance with the matrimonial rules, plaintiff presented executed written retainer agreements (*see* 22 NYCRR 1400.3) which contain a fee arbitration provision (*see* 22 NYCRR 1400.7) and attached a copy of the statement of client's rights and responsibilities (*see* 22 NYCRR 1400.2). In his complaint, plaintiff alleged "[t]hat neither Part 136, nor Part 137 of the Uniform Rules is applicable because of the amount in controversy, and, as to the latter Part, also because representation of Poster commenced in 1997." Given that it is undisputed that the amount in dispute exceeds $100,000, the parties' fee dispute is not subject to arbitration under the matrimonial rules, and plaintiff's complaint states a valid cause of action that should not have been dismissed on the basis of his failure to give defendant notice of her right to arbitrate (*compare Migdal, Pollack & Rosenkrantz LLP v Coleman*, 6 Misc 3d 378, 381 [Sup Ct, NY County 2004] ["In conclusion, the court finds that since the amount in dispute with respect to the fees covered by part 136 was less than $100,000 at the time of the filing of this action, and plaintiff failed to give the notice with respect to arbitration required therein and thus was unable to assert in its complaint the allegation of compliance as required by section 136.5 (c), the complaint as pleaded (for 'legal services in connection with the dissolution of his marriage') is dismissed"]).

However, issues of fact preclude the grant of summary judgment in plaintiff's favor and the order should be affirmed in that respect. Indeed, with respect to plaintiff's request for summary judgment on his cause of action for an account stated, the Supreme Court (Judith J. Gische, J.) observed at a December 20, 2002 hearing in connection with defendant's application to have plaintiff turn over her file, that "there is a significant dispute between [plaintiff] and the client regarding the amount of fees that are outstanding."

Accordingly, the order of the Supreme Court, New York County (Emily Jane Goodman, J.), entered March 12, 2009, which denied plaintiff's motion for summary judgment and granted defendant's cross motion to dismiss the complaint, should be modified, on the law, to deny defendant's cross motion to dismiss and to reinstate the complaint, and otherwise affirmed, without costs.

GONZALEZ, P.J., RENWICK and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, New York County, entered March 12, 2009, modified, on the law, to deny defendant's cross motion to dismiss the complaint and to reinstate said complaint, and otherwise affirmed, without costs.