OPINION OF THE COURT
Richard A. Bollinger, J.
In this post-divorce dispute, the wife seeks to dismiss a charg *297 ing lien against a long-ignored, but recently recovered, child support obligation. The lien is asserted by her former counsel, who rigorously prosecuted the recovery action.
The facts are undisputed. A default divorce occurred in 1993, the husband was ordered to pay child support, and the court in 1993 awarded a judgment for $25,226.72 in unpaid child support. Thereafter, in a series of events described in a prior opinion of this court, the parties engaged in repeated court appearances in the mid-1990s. When the dust settled, the original judgment of divorce remained in full force and effect. In 2012, the wife moved, originally in Family Court, to recover all the accumulated child support, which with accumulated interest, totaled $549,403.62 as of September 2011. This court eventually upheld the earlier 1993 money judgment. The husband, whose counsel discovered a missing oral stipulation from the alleged settlement of the child support disputes in 1995, moved to set aside the judgment and for further relief in 2012. This court denied that request in an earlier opinion (39 Misc 3d 1227[A], 2012 NY Slip Op 52483[U] [2012]).
After the court affirmed the earlier judgment, extensive settlement negotiations ensued. The husband eventually moved to modify his ongoing child support obligation based on his current income and the emancipation of his oldest son. In the midst of these legal steps, the husband sold a house and this court, through an order sought by the wife’s counsel, allowed the wife to escrow the husband’s share of the net proceeds, in anticipation of a final judgment for unpaid child support. The husband made financial disclosure to the court, and argued that he was without significant income or other financial resources. Even so, during the settlement discussions, the husband offered to pay in excess of $150,000 in full satisfaction of the prior judgment and any support arrears. The wife declined to accept this amount and elected to pursue the litigation.
During the course of the wife’s pursuit of her ex-husband, wife’s counsel applied for interim attorney fees. Wife’s counsel sought the fees from the sequestered proceeds from the husband’s sale of his real property. In an order issued July 12, 2012, this court granted fees of $15,000 to the wife’s counsel and allowed this sum to be paid from the house proceeds, which were held in escrow by the husband’s attorney. Husband’s counsel argued that the fees, on their face, were the property of the husband. As a consequence, husband’s counsel requested $5,000 in fees to cover the husband’s legal expenses, or he would *298 be without resources to finance a defense to the claims of the wife. This court granted that request as well. Importantly, at the time of the application for counsel fees, the court made no finding regarding the appropriate child support to be paid by the husband. Under the terms of the original divorce decree, he was required to pay health insurance costs for the children, and in recent court appearances, his counsel argued that he was entitled to an offset against child support for that cost.[1]
There has been no determination of what amount of the house sale proceeds are necessary to pay any child support arrears owed by the husband. This court has not heard proof on any claimed offsets against the child support obligation. Furthermore, this court is struck by the current legal position of the wife, who, after delaying 16 years, now seeks to recover child support. The children, who were the intended beneficiaries of the support, are either emancipated or nearly emancipated. In affidavits submitted earlier, the wife suggests she made applications for welfare and food stamps while living at her mother’s house at the time of the divorce in the mid-1990s, but there is no evidence before this court that the wife had incurred any financial consequences as a result of the husband’s failure to pay child support for 16 years. There is no evidence that the children suffered any deprivation because of the husband’s failure to pay child support. Against this background and during the midst of serious settlement negotiations, wife’s counsel moved to withdraw, citing friction with his client and her failure to communicate with him. The attorney also sought judgment for fees in the amount $30,545.91, and a charging lien under section 475 of the Judiciary Law against the house proceeds set aside by the court under its earlier order.
In advance of the return date of the husband’s motion, the wife retained new counsel, who cross-moved to dismiss the attorney’s claim for a charging lien, and sought disgorgement of the sums advanced to both the wife’s former counsel, and husband’s counsel. Wife’s new counsel argued that those sums were erroneously paid from the “wife’s child support.” Wife’s new counsel claims that the prior counsel cannot have a charging lien against child support, and cannot, under any circumstances, be paid attorney fees from the wife’s child support. He argues that the former attorney did not create any “new funds” on which the charging lien under section 475 of the Judiciary *299 Law could attach because the entire amount owed to the wife was child support and no liens are permitted against child support. Wife’s counsel also disputes the former attorney’s compliance with several portions of the New York rules of court.
The wife’s former attorney argues that the wife should be estopped from rejecting the charging lien because she made repeated unequivocal promises to pay him during the period of his work for her. The attorney produced an email from the wife, in which she states, “First person I would pay when I get the lien money is you.” The former attorney also claims that his efforts — filing judgments and commencing actions to recover the funds in separate counties — created a recovery which benefits the wife and hence, constitutes “new funds” under the charging lien statute. The former attorney also strongly disputes any disgorgement application, noting the wife did not oppose the application for interim attorney fees. He contends, without contradiction, that the wife received monthly billing statements and never objected to the billed fees. He further argues that if the court declines to confirm the award of interim fees, then “any award of attorneys fees, perhaps even the charging of any fee, would be prohibited where child support arrears are sought.” The husband’s attorney, who received $5,000 in interim attorney fees, also argues that the disgorgement claim is simply a collateral attack on the July 12, 2012 order and that the time to appeal has expired. The husband’s former counsel joins the wife’s former counsel in arguing that the judgment for child support from 1993 does not dictate that all of the husband’s assets— including the house sale proceeds — “constitute child support arrears.”
Initially, from this court’s perspective, a number of factual clarifications must be made. First, at this stage, the sums held in escrow have no identifying characteristic and the court has made no finding of what portion of these funds are owed to the wife as child support. There is no question that the wife asserts a claim to the entire fund as unpaid child support. The amount held in escrow is substantially less than the amount claimed by the wife, even without interest, but exceeds the amount of the 1993 judgment for child support in the amount of $25,226.72. Second, there is also no dispute that this court, in granting an order to sequester the house sale proceeds, knew that these funds were, at this point, the only source of available cash to pay either the current judgment or any future judgment to the wife for unpaid child support. Third, the order granting the at *300 torney fees to be paid to wife’s counsel and husband’s counsel from the sums held in escrow is more than eight months old. There was no appeal of that disbursement order. Therefore, it constitutes a final order. Fourth, while wife’s current attorney claims the former attorney “did not create an interest in anything,” in fact, his legal work, after a delay of 16 years, has actually created the only available money to pay amounts owed by the husband to his wife. Prior to the former attorney’s work, the wife had a 16-year-old judgment and a child support order, which she had never enforced against her former husband. The former attorney immediately commenced a Family Court action in Ontario County, transcribed the original judgment and sought to enforce it. But for the former attorney’s work — just as the husband was selling his Ontario County house — the wife would now have no available funds to satisfy the child support obligation. It is undisputed that the former attorney’s efforts to collect the judgment created a readily-available fund of house sale proceeds from which the wife may soon collect heretofore only illusory decades-old child support obligations owed by the husband. Faced with these facts, the court must decide the question of whether the former attorney’s charging lien against these funds is justified. This complex issue involves seemingly contradictory statutory rights and requirements under the Judiciary Law, the Domestic Relations Law, and the Civil Practice Law and Rules.
An Attorney’s Charging Lien
Section 475 of the Judiciary Law contains broad language regarding the extent of an attorney’s charging lien:
“the attorney who appears for a party has a lien upon his or her client’s cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, judgment or final order in his or her client’s favor, and the proceeds thereof in whatever hands they may come” (emphasis added).
The state legislature intended that attorneys seeking to be paid could reach funds held by third parties, including the escrow agent in this case. The charging lien in this case automatically came into existence, without notice or filing, upon commencement of the action to recover funds on behalf of the wife, and is measured by the reasonable value of the attorney’s services in the action, unless fixed by agreement. (N.K. v M.K., 19 Misc 3d *301 1124[A], 2008 NY Slip Op 50837[U], *7 [Sup Ct, Kings County 2008]; Resnick v Resnick, 24 AD3d 238, 239 [1st Dept 2005]; see also Theroux v Theroux, 145 AD2d 625 [2d Dept 1988].) There are three prerequisites to the creation of a charging lien, as a result of the attorney’s efforts: (1) the client must assert a claim, (2) which results in proceeds, (3) payable to or for the benefit of the client. (Batista v KLS-Kachroo Legal Servs., P.C., 2012 NY Slip Op 32016[U], *6 [Sup Ct, NY County 2012]; City of Troy v Capital Dist. Sports, 305 AD2d 715, 716 [3d Dept 2003] [the attorney’s charging lien “attaches only when proceeds in an identifiable fund are created by the attorney’s efforts in that action or proceeding”]; Tunick v Shaw, 6 Misc 3d 1014[A], 2004 NY Slip Op 51787[U], *9 [Sup Ct, NY County 2004]; Moody v Sorokina, 50 AD3d 1522 [4th Dept 2008]; Theroux v Theroux, 145 AD2d 625 [2d Dept 1988].) In a matrimonial action, a charging lien is available only to the extent that an equitable distribution award reflects the creation of a new fund by an attorney greater than the value of the interests already held by the client. (Noble v Noble, 2011 NY Slip Op 30835[U] [Sup Ct, Albany County 2011]; Resnick v Resnick, 24 AD3d 238 [1st Dept 2005].)
The New York Rules Regarding Charging Liens on Support Funds
Several New York courts have held that a charging lien does not attach to maintenance or alimony. (Theroux v Theroux, 145 AD2d 625 [2d Dept 1988].) The line of authority regarding liens against maintenance goes back nearly a century to the New York Court of Appeals decision in Turner v Woolworth (221 NY 425, 430 [1917]): “equity, confining the fund [for alimony] to the purposes of its creation, declines to charge it with liens which would absorb and consume it.” (See also Indell v Tabor, 185 NYS 873, 874-875 [1920] [attorney not entitled to reach client’s alimony to satisfy his judgment for attorney fees].) On the question of the charging lien asserted against child support, there is less judicial authority from New York’s appeals courts. The Appellate Division, Fourth Department, suggested that no retaining lien could be asserted against child support arrears. (Schelter v Schelter, 206 AD2d 865 [1994] [“if the funds were treated as payments for child support, we would conclude that such payments are not subject to an attorney’s retaining lien”].)[2] *302 While Schelter v Schelter involved a retaining lien, nonetheless it provides some indication that attorney’s liens cannot be enforced against arrears in child support. But the Fourth Department’s omission in Schelter v Schelter to cite any then-existing New York authority on the acknowledged difference between the common-law retaining lien and the broad reach of the statutorily-mandated charging lien in New York leaves the question still somewhat undefined.
There is also lower court precedent on the charging lien and its assertion against child support payments, but the opinions proceed in different directions. In Shipman v City of N.Y. Support Collection Unit (183 Misc 2d 478 [Sup Ct, Bronx County 2000]), an attorney represented a mother in a paternity claim against a professional baseball player. After years of litigation, a filiation order was issued and child support directed. The Family Court also ordered $10,000 in attorney fees to be paid by the father to the mother’s attorney. Thereafter, the City of New York’s Support Collection Unit (SCU) obtained funds seized from the father’s bank account. The seized funds were less than the amount owed by the father for child support arrears. Therefore, the funds would only offset the arrears in child support and there were no additional funds to pay the $10,000 awarded by the Family Court to the mother’s attorney. The mother’s attorney asserted a charging lien on the sums held by the Support Collection Unit and demanded payment prior to any distribution to the mother.
The court in Shipman acknowledged that the funds held by the SCU were solely the result of the attorney’s work. The attorney argued: “[T]he New York State Legislature has expressly stated that New York’s public policy under Judiciary Law § 475 was to encourage attorneys to represent those persons without funds to pay in advance to retain qualified counsel.” (Id. at 481.) In contrast, the SCU argued that they held the actual funds, had only collected child support, and did not have statutory authority to collect attorney fees. (Id. at 482.) The SCU also argued that public policy considerations set forth in New York case law applicable to charging liens against alimony are “equally, if not more, applicable to child support” (id.). The court held that public policy dictates the protection of child support payments from the enforcement of attorney liens and that *303 payments collected by the SCU “are funds for the exclusive benefit of the infant child.” (Id. at 486.)[3] The court concluded:
“[Because] it is repugnant to the public policy considerations in New York to allow the custodial parent to contract with an attorney to permit the payment of attorney fees from an award of child support, . . . this court will not assist an attorney attempting to collect attorney’s fees from an award of child support.
“Based upon the public policy that protects an award of child support from a judgment creditor’s lien, this court concludes that consistent with the public policy in New York State, an attorney representing a custodial parent may not enforce an attorney’s lien against an award of child support. This court further finds that it is also against public policy for the custodial parent to enter into an agreement to allow payment of attorney fees to be collected from a child support award. Such agreement is void.”[4] (Id. at 486-488.)
In Shipman, the court acknowledged that another lower court had proceeded in a different fashion. In Spinello v Spinello (70 Misc 2d 521 [Sup Ct, Nassau County 1972]), an attorney was retained by a doctor to recover funds from his former partner. The attorney succeeded and asserted a charging lien against the fund, but the doctor’s former wife asserted a claim for unpaid *304 child support. The court concluded that the fund created was not expressly a support fund, and therefore the wife’s claim did not have precedence over the attorney’s lien. In reaching this conclusion, the court warned of the danger of elevating support liens over attorney liens: “Should the claim of a creditor, albeit for alimony, be allowed to defeat the attorney’s lien, the protection securing payments of just fees would be defeated. Many clients with just claims, but without independent funds would, as a result, be unable to secure counsel.” (Id. at 526.) Both Shipman and Spinello are easily differentiated from this case. In Shipman, the SCU held the funds, which were entirely child support. The court concluded that the holder of exclusively child support funds was only authorized to pay over the funds to the spouse and had no authority to pay over funds to any other party. In Spinello, the money was held by the former partner and represented undifferentiated funds, collected by the attorney to satisfy other obligations and not specifically child support. In this case, the funds, while not yet identified as child support because of the husband’s claims for offsets and disputes over the amount owed, were nonetheless collected as based on the claim that they represented child support arrears. Thus, in this court’s view, neither Shipman nor Spinello directly controls here.
In the face of the uncertain New York law, this court looks to other jurisdictions for guidance. The majority rule in the United States is that an attorney lien may not attach to monies received for child support. (See In re Marriage of Etcheverry, 921 P2d 82 [Colo Ct App 1996] [the public policy of this state prevents the assertion of such a lien against funds owing to a parent as child support pursuant to a court order]; Sue Davidson P.C. v Naranjo, 904 P2d 354 [Wyo 1995] [no attorney’s lien permitted against child support payments]; Fuqua v Fuqua, 88 Wash 2d 100, 104-106, 558 P2d 801, 804-805 [1977] [“statutory attorney’s liens may not be asserted against monies which represent payments for child support”]; Hubbard v Ellithorpe, 135 Iowa 259, 260-263, 112 NW 796, 797-798 [1907] [temporary alimony and support not subject to a charging lien]; Johnson v Gerald, 216 Ala 581, 583, 113 So 447, 449 [1927] [attorney lien inapplicable to a divorce suit when allowance is made to the wife]; Bucknam v Bucknam, 347 Mo 1039, 1044, 151 SW2d 1097, 1100 [1941] [an attorney is entitled to a lien on alimony for his services, but only to the extent of attorney fees and costs taxed and included in the allowance of alimony; he cannot enforce any lien against *305 the remainder of the allowance]; Law Off. of Tony Center v Baker, 185 Ga App 809, 810, 366 SE2d 167, 168-169 [1988] [mother has no power or authority to make a contract with an attorney at law whereby she agrees to pay him one half of whatever sums he collects as child support from the father by virtue of the decree and such an agreement, being contrary to the policy of the law, is void]; Minor Child of Zentack v Strong, 83 Ohio App 3d 332, 336-337, 614 NE2d 1106, 1109 [1992] [“we side with the majority (of courts) and hold as did the Fuqua court that, ‘as a matter of public policy, statutory attorney’s liens may not be asserted against monies which represent payments for child support’ ”]; Brake v Sanchez-Lopez, 452 So 2d 1071, 1072 [Fla Dist Ct App 1984] [attorney’s charging lien is not enforceable against child support payments]; Glickman v Scherer, 566 So 2d 574, 575 [Fla Dist Ct App 1990] [child support is not subject to an attorney’s charging lien]; Sanner v Sanner, 46 SW2d 936, 937-938 [Mo Ct App 1932] [alimony and child’s support not subject to attorney’s lien]; Hilleary v Hilleary, 189 Mo App 704, 706-709, 175 SW 282, 283-284 [1915] [allowance of alimony for maintenance and support is not such a judgment as is contemplated by the attorney’s lien statute, there can be no lien on alimony awarded for maintenance and support]; Jasper v Smith, 540 NW2d 399, 405 n 4 [Sup Ct SD 1995] [“the public policy of this state is that the amount established as child support be for the necessary maintenance, education and support of the child only, and no excess is intended to exist for such extraneous claims such as parental attorney fees . . . All too often in setting child support, there are simply too few dollars to meet even the most modest standard of living . . . (and judges) are called upon to apportion poverty and its accompanying misery” (internal quotation marks omitted)].) While New York’s highest Court has not recently opined on the issue of sheltering support funds from attorney’s liens, other state courts have repeatedly cited the century-old New York Court of Appeals decision in Turner v Woolworth (221 NY 425, 430 [1917]) in refusing to let an attorney’s lien invade any maintenance or child support award. In most of these cases declining to enforce attorney’s liens against child support, the courts have echoed the conclusion of the Washington Supreme Court in Fuqua:
“[T]o allow an attorney’s lien to be asserted against child support would necessarily result in counsel for the custodian taking from the children involved, *306 monies which the court has determined to be necessary to assure their adequate support. It is impractical to assume that the trial court can consider possible liability for attorney’s fees in ascertaining a support figure. ... If the assertion of liens such as these became commonplace, the court’s function in providing for the adequate support of minor children, the innocent parties to these actions, would be wholly frustrated. ‘Equity, which creates the fund, will not suffer its purpose to be nullified.’ Turner v Woolworth, 221 N.Y. 425, 430, 117 N.E. 814, 816 (1917). We therefore hold that, as a matter of public policy, statutory attorney’s liens may not be asserted against monies which represent payments for child support. Any effort to assert such a lien is void.” (Fuqua v Fuqua, 88 Wash 2d at 107, 558 P2d at 805.)
The California courts have adopted the same broad-reaching view that the charging lien for child support collection — and any agreement by a parent to pay legal fees from an award of child support — violates public policy. In Hoover-Reynolds v Superior Ct. (50 Cal App 4th 1273, 58 Cal Rptr 2d 173 [4th Dist 1996]), the court held that because a contract between parents diminishing court-ordered child support is not binding on the child or the court, a parent’s contract with an attorney should likewise be disregarded to the extent it would diminish the fund the court has deemed necessary for the child’s welfare.
Faced with an abundance of out-of-state and some influential New York authority against his assertion of a charging lien, the former attorney suggests that the substantial arrears in child support cast his charging lien in a different light. He argues that the compelling state interests in providing ongoing child support are somewhat muted because the wife did not collect child support for 16 years and substantial arrears have accrued. This suggestion is not without support in the courts of other states. (See Matter of Marriage of Wageman, 25 Kan App 2d 682, 968 P2d 1114 [1998] [attorney may lien arrears in child support when several children were already emancipated, children were adequately supported as minors, and enforcement of the lien would not deprive children of necessities]; Landry v Roebuck, 193 Mich App 431, 484 NW2d 402 [1992] [attorney’s lien may attach to retroactively increased child support arrearages].) But these cases are outside the majority rule regarding the attachment of attorney’ liens to child support arrearages. *307 When an attorney attempted to attach his lien to the arrearages for child support, the court in Hoover-Reynolds v Superior Ct. (50 Cal App 4th 1273, 1280, 58 Cal Rptr 2d 173, 177-178 [1996]) rejected that claim, citing Fuqua v Fuqua (88 Wash 2d at 108, 558 P2d at 805-806):
“[Attorney] has asserted that his liens are valid at least to the extent that they involve back support— with this contention we cannot agree. We see no reason to allow assertion of a lien against support monies which are, after long delay, made available to children who have been deprived of the benefit of adequate support on a regular basis. The fact that such children may have managed to get along, though deprived of adequate support for some time, certainly does not compel the conclusion that those support monies are in any way less important to the welfare of the children involved than they were at the time awarded. Indeed, it is quite likely that the back support would be needed to satisfy indebtedness incurred by the custodian on behalf of the family during the period in which the family was without adequate support.”
The California Court of Appeals went even further to describe the impact of a charging lien’s diversion of funds from the child beneficiary, although it appears their views were premised on judicial supposition rather than proof in the appellate record. They opined:
“The failure of a non-custodial spouse promptly to pay child support impoverishes the child by forcing the custodial spouse to defer some expenses, to borrow to pay those expenses which cannot be deferred, or to deplete savings earmarked for future security. Arrearages, when finally collected, do not somehow lose their character as being necessary to support the child’s welfare. On the contrary, access to these arrearages may be as critical to the child’s welfare as are access to current payments, because arrearages may be the only source available for the family to replenish their depleted resources.” (50 Cal App 4th at 1280, 58 Cal Rptr 2d at 178.)
Under these circumstances, the overwhelming weight of authority strongly suggests that this court decline to adjudicate a charging lien against child support arrears in any fashion different from the application of the lien to future support.
However, before reviewing the options for this court, there is one final recognition of authority that must be considered in *308 this case. While the apparent substantial weight of judicial authority condemns charging liens against child support, the same courts almost uniformly acknowledge the unintended consequence of such a ban: attorneys will seldom be willing to assist parents in their collection efforts because there will be a diminished expectation of payment for their services. Typical of these judicial musings on the consequences of the ban is the view of the California Court of Appeals in Hoover-Reynolds v Superior Ct.:
“We recognize that the rule we adopt may make it more difficult for a custodial spouse to retain legal counsel to collect child support arrearages when a third party lien is asserted against those arrearages. However, we are of the opinion that preservation of the child support for the benefit of the child outweighs the lien right interests of attorneys even if some attorneys may as a result be reluctant to extend their services in child support collection matters.” (50 Cal App 4th at 1280 n 7, 58 Cal Rptr 2d at 178 n 7.)
Other courts, which have both rejected charging liens and permitted such liens in other contexts have voiced a similar caution about the impact of a ban on collecting attorney fees from child support arrears. (Landry v Roebuck, 191 Mich App at 434, 484 NW2d at 403 [such a ruling would tend to inhibit litigation on behalf of such minors and their custodians who seek to increase child support orders already in force, but thought to be inadequate]; Matter of Marriage of Wageman, 25 Kan App 2d 682, 968 P2d 1114 [1998] [ruling against attachment would inhibit litigation necessary to increase adequate support].) New York courts have also cautioned against ignoring the equally compelling state policy that underlines the charging lien in section 475 of the Judiciary Law. In an instance in which a child support enforcement unit sought to defeat an attorney’s charging lien, one Monroe County Supreme Court Justice intoned:
“There would be no monies payable to [the scofflaw parent] if his attorney had not taken the case and pressed it to a successful conclusion. She was, in a sense, working for both the Support Unit and the compensation carrier. It would be obviously unjust and inequitable for the Support Unit to deprive her of payment for her work, which is what it is trying to do here. The unit’s position, in fact, is self-defeating. If attorneys have no chance of getting *309 paid they will not take cases. If no attorney will pursue a cause of action on behalf of a plaintiff who owes support, because the Support Unit will simply take the fees, the result will be that such plaintiffs will never get representation, and eventually the unit will have less money available on which to levy. The best precedent for this situation is the fable of the goose that laid the golden eggs.” (Daniels v Monroe County Child Support Collection Unit, 196 Misc 2d 595, 597 [Sup Ct, Monroe County 2003], affd 11 AD3d 944, 945 [4th Dept 2004] [“the legislative action seeking to ‘strengthen( ) child support enforcement’ left undisturbed Judiciary Law § 475”].)
The facts in Daniels v Monroe County Child Support Collection Unit are not identical to those here, but the articulated principle regarding attorneys pursuing recoveries for parties owed or owing child support is compelling. If an attorney is retained to collect child support for an indigent party and collects half of the outstanding unpaid balance from the payor’s real or personal property, under the theory advanced by the wife in this matter, the attorney for the recipient would receive nothing from the collected funds because the entire amount recovered would be “child support” immune from any lien or judgment from counsel.[5] As another judge in a similar case noted:
“I question whether it is in the children’s best interest for this Court to structure a policy which dictates that it is the responsibility of the custodial parent or the legal profession to bear the expense for collecting child support payments. It is incongruous to expect custodial parents who cannot afford to support their children to pay attorneys to collect court ordered child support payments. It is also unreasonable to expect attorneys to act pro bona in such instances, especially when they are constantly being criticized by the general public for continually promoting litigation.” (Sue Davidson, P.C. v Naranjo, 904 P2d 354, 359 [Wyo 1995, Macy, J., dissenting].)
In short, there are important public policies regarding a child *310 support recipient’s access to attorneys to enforce child support obligations that, in this court’s view, must be balanced against the strict “no charging liens against child support” ban advocated by the wife in this case.
This court is chary about the inherent complication created by the conclusion in Shipman that an agreement between a parent and an attorney, in which the parent hires the attorney to recover child support arrears and in which the attorney seeks to recover the cost of collection from child support arrears is void as against public policy. This conclusion is impractical and troubling to the everyday business of this court. This court routinely encounters applications from unpaid parents of children, demanding child support arrears, often after service of a divorce complaint, and before the initial preliminary conference. The parents often have no independent means to fund the attorney’s efforts to collect arrears. If this court holds, as Ship-man did, that such an agreement which contains an agreed charging lien against any collected sums is void, then, in this court’s judgment, few attorneys — apart from pro bona efforts— would assist in that collection process. Furthermore, in this court’s experience, many claims for child support arrears are settled, with offsets between parents for other expenses or other costs. If Shipman’s holding is taken to its logical extreme, then the court could never reduce child support arrears in the settlement of a complicated postjudgment divorce action and still allow an attorney to claim a charging lien on the settlement proceeds. Declaring the charging lien void implies that a court cannot order attorney fees to be paid by the payor spouse until after they have paid the arrears to their spouse in full. This decision would mean that the recipient’s attorney most often would be left without any resources to collect earned fees. If an agreement to pay an attorney from child support payments is void, most attorneys will decline to represent indigent parents seeking to collect overdue child support. The entire child support collection process will be socialized, and only government-financed attorneys will engage in assisting in child support collection, a result that would be impractical. In this court’s view, this unintended but easily foreseeable consequence of such a holding would lead to fewer child support collections by private counsel, greater dependence on publicly-funded collection services and more scofflaws. Finally, if in a divorce action, the only marital claims involve maintenance and child support, and the divorcing couple have no other assets for equitable distribution *311 and the recipient spouse has no other available funds, then the recipient’s attorney could not collect any fees for the divorce— even if awarded by the court — until after the entire child support and maintenance arrears are paid in full.[6] It is unlikely that attorneys would represent either spouse in that scenario. Even if a parent does have some independent means and posts an advance fee with the signature on a retainer agreement — as happened here — a resistant spouse can force the attorney to expend substantial fees to recover hidden funds and, when all is said and done, any fee award granted by a court could not, under Shipman, be paid in advance of the payor paying the entire sum due for child support.[7]
In this court’s experience, the public policy of this state should vest a parent with the right to enter into an agreement to invade child support funds to pay counsel fees if, in the parent’s judgment, the attorney fees are necessary to secure future child support payments and the fees are deemed reasonable under the supervision of the court. This court notes that even under the Child Support Standards Act (Domestic Relations Law § 240 [1-b]), the recipient parent is given wide discretion in how to spend what child support he or she receives. There are no statutory or common-law directives of how a recipient parent can spend child support payments once received. A parent can spend the support payments on anything he or she deems appropriate. In essence, as this court understands it, there is a powerful public policy in New York that child support should he paid for children, but no defined public policy that governs what a parent can do with the child support once it is paid. The resulting rule is simple: the law requires that it be paid by the payor for the benefit of the child, but there is no law requiring it be spent by the recipient exclusively for the child. A parent, after receiv *312 ing child support, can use the funds to pay any costs or any legal fees, even legal fees unrelated to his or her collection of support or any pending marital claim. If New York State gives a parent that wide discretion to pay any costs the parent deems appropriate, whether for the benefit of the child or not, why should any court prohibit the paying of an attorney to collect the funds in the first place? Why should an attorney, who agrees to collect the funds and has a signed retainer agreement that permits him a charging lien on the collected funds, be unable to collect if the client refuses to pay him? What if the recipient instead elects to use the funds to buy themselves a new jacket, pay off a credit card for dining expenses, or depart on a vacation? Under this scenario, the recipient spouse can choose to pay the attorney from collected child support but the attorney cannot enforce his right to payment from the discretionary use of collected child support funds after they are collected. This court cannot reconcile this inequitable result, which shifts the discretion to pay accrued fees solely to the client, and ignores the sweeping language of section 475 of the Judiciary Law, which permits the charging lien to attach to any funds in “whatever hands they may come.” In addition, the voiding of an attorney’s charging lien against child support would lead to the inevitable consequence foretold by the courts cited in this opinion: lawyers, faced with no prospect for recovery of fees from child support arrears, will simply decline to assist indigent or less wealthy parents who are owed child support. Attorneys, performing the quasi-public role of collecting support payments for parents with children from recalcitrant former spouses, will have no reasonable method to collect their fees if their clients have any dispute over their work or simply declines to pay them. The dearth of attorneys to help those seeking child support arrears, foretold by the courts cited above, will, in this court’s judgment, become a reality if the courts deny attorney’s charging liens in these cases. Parents seeking child support payments should have the discretion to enter into agreements with attorneys to assist in the recovery of those sums and be able to compromise claims — and pay their counsel from the child support arrears — with appropriate court supervision on the reasonableness and necessity of the fees.
The facts of this case highlight the incongruity of voiding the charging lien. In this case, the attorney retained to pursue claims on behalf of the wife knew that he was seeking child support payments. The amount he sought was very substantial: more than $440,000 even without interest. Under the logic of *313 Shipman, the retainer agreement to allow him to collect payment from these accumulated arrears was void ah initia. However, even if he collected the entire $440,000, he could not assert any claim against that amount. If the wife refused to pay his fees from the collected amount for any reason, he would have to recover his fees in a separate proceeding and find an independent source of funds to pay those fees. In all likelihood, he would be left with nothing and his expectation of a fee will be reduced to a handful of dust.
For these reasons, this court declines to follow the reasoning in Shipman v City of N.Y. Support Collection Unit and declare the retainer agreement and the agreement to permit a charging lien between the wife and her former attorney void. The agreement is valid and enforceable against the proceeds pending before this court. The attorney’s charging lien for fees is also valid and enforceable against the proceeds held pursuant to the court order.[8] Instead, to determine what portion of such proceeds may be utilized to pay the charging lien, this court adopts a comparable analysis from the Second Department, in somewhat comparable facts, to resolve this nettlesome question.
CPLR 5205 (d) provides that certain “personal property” is exempt from any liens for satisfaction of a money judgment except such part as a court determines to be unnecessary for the “reasonable requirements of the judgment debtor and his dependents.” CPLR 5205 (d) (3) exempts:
“[P]ayments pursuant to an award in a matrimonial action, for the support of a wife, where the wife is the judgment debtor, or for the support of a child, *314 where the child is the judgment debtor; where the award was made by a court of the state, determination of the extent to which it is unnecessary shall be made by that court.”
To determine the reach of this statute in balancing the rights of attorneys seeking fees in support cases and the rights of support recipients, there is no better guidance than the Second Department decision in Matter of Balanoff v Niosi (16 AD3d 53 [2d Dept 2005]). In that case, a divorced wife obtained an income execution for support directing the husband’s employer to deduct the maintenance payments from the husband’s income and pay it over to the wife. The wife’s unpaid attorney obtained a judgment against the wife and served the husband and his employer with restraining notices alleging that they were in possession of property in which the attorney had an interest: to wit, the wife’s monthly maintenance payments. When they refused to pay him, he commenced an action, seeking recovery under the restraining notices. The claim was dismissed and the restraining notices vacated, but the Court laid out the protocol for determination of the wife’s reasonable requirements, as a judgment debtor, and the attorney’s right to collect his fees pursuant to CPLR 5205 (d).
The Second Department traced the history of the maintenance exemption under CPLR 5205 (d) (3), referring back to the common law, as well as earlier versions of the Civil Practice Act. The Court noted that the maintenance payments before the Court were “self-evident” from the start of the action and, hence, the judgment debtor did not have an obligation to prove “her reasonable requirements” (16 AD3d at 57). As a result, the burden shifted to the judgment creditor — the attorney — “of tendering and framing the issue upon his own motion.” (Id.) The Court then noted that the “normal device for reaching income in excess of the debtor’s reasonable requirements is the installment payment order pursuant to CPLR 5226.” (Id.) Under that procedure, a court can order specified installment payments to a judgment creditor and, in fixing the amount of the payments, “the court shall take into consideration the reasonable requirements of the judgment debtor.” (Id. at 58 [internal quotation marks omitted].) The Court then concluded:
“Maintenance is a form of ‘income’ that is exempt, just like 90% of a debtor’s salary, and such clearly exempt income, when sought at its source, can only be divested of its exempt status upon proper application to a court for a determination of the judg *315 ment debtor’s reasonable requirements (see CPLR 5205 [d]). This holding is mandated by the statutory analysis discussed above, but it also conforms to our prior treatment of maintenance as a generally exempt fund. For instance, we have consistently held that an attorney’s charging lien does not attach to maintenance and alimony” (id. at 63).
In considering the request in this case, this court notes that two factors easily distinguish the holding in Balanoff v Niosi. In this case, a charging lien is the proffered recovery device of the creditor attorney and the subject sought in satisfaction of the creditor’s lien is child support and not maintenance. But, in this court’s view, neither factor requires a deviation from the protocol set forth in Balanoff v Niosi. The attorney in this case clearly seeks a money judgment from the wife who does not seriously dispute the attorney’s claim for fees. He routinely billed the fees and there is no evidence, prior to attorney-client friction acknowledged by the attorney, that the wife ever contested the fees. Therefore, the contrast between the restraining order in Balanoff v Niosi and the charging lien set forth here is a distinction without a difference. The charging lien and the restraining notices are both enforcement devices available to the attorney as a judgment creditor. The attorney in this case is no different from his counterpart in Balanoff v Niosi: he is seeking to enforce a money judgment through an available debt recovery device, in this case, the charging lien under section 475 of the Judiciary Law.
The bigger, but perhaps still not decisive, distinction between the facts in the Second Department decision and those in this case is that the subject of this proceeding is child support, while maintenance was the subject in Balanoff v Niosi. In analyzing this difference, the first question is whether child support is subject to the requirements of CPLR 5205 (d). Paragraph (3) of that provision explicitly refers to several factors: the payment must be of an “award in a matrimonial action,” be “for the support of the child, where the child is the judgment debtor” and “where the award was made by a court of the state, determination of the extent to which it is unnecessary shall be made by that court.” The last criteria clearly refers to the general rule articulated in subdivision (d) that any portion of “personal property” is exempt “except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor.” (CPLR 5205 [d].) The first and the last criteria *316 are easily met: the child support in this case was granted by a judgment of divorce and, to the extent that any court would have to determine whether an asset was “unnecessary for the reasonable requirements of the judgment debtor,” this court can — and will, if necessary — make a “determination” on that issue.
In this matter, another critical issue is whether the funds accumulated when the wife’s counsel escrowed the husband’s proceeds from the sale of the house are part of an “award for the support of the child” under CPLR 5205 (d) (3). The former attorney and the husband’s attorney argue that the funds are still undifferentiated funds titled to the husband. While this is legally correct, this court cannot ignore the fact that these funds were escrowed specifically because the wife has a 16-year-old judgment in excess of $25,000 in child support arrears and a substantial claim for unliquidated support arrears. The wife, in all of her actions before this court, identified the funds owed by the husband to the wife as child support. Furthermore, to the extent that the wife is seeking to enforce an unpaid judgment for child support arrears, the sums escrowed are security for the payment of that obligation. While the parties are still awaiting a judicial determination of how much of the funds are owed to the wife for child support, there can be no doubt that the funds were escrowed and sequestered because they were intended to be used to pay the husband’s child support obligations under either the original judgment of divorce or some other eventual court order.
The mere determination that the funds were escrowed to pay eventual child support does not end this inquiry. CPLR 5205 (d) (3) suggests that this court could determine that a portion of what the husband owes for child support may be unnecessary for the reasonable requirements of the children who were covered by the original order. Several factors need to be analyzed in this evaluation. The original child support order was presumably fashioned under the Child Supports Standards Act and it reflected the presumptive amount of child support to be paid by the husband for the care of his children. In that regard, the amounts ordered to be paid under the original judgment reflect the state legislature’s direction and a strong public policy that the exact sums specified in the original order — and no other— are presumed to be sufficient for the “reasonable requirements” of the children. In this respect, the maintenance referenced in Balanoff v Niosi does not carry the same imprimatur of the *317 state legislature and. the express direction that one party pay the other an amount presumptively sufficient for the children. Maintenance is discretionary and hence, the argument that a subsequent court, reviewing the rights of a creditor to a stream of maintenance payments, could decide that some amount of maintenance is “unnecessary for the reasonable requirements” of a parent would be a discretionary review of the parent’s needs and expenses. (Wagner v Wagner, 143 Misc 2d 1044 [Sup Ct, Monroe County 1989] [court required proof of current financial information, including a budget of monthly expenses, submitted by plaintiff wife to determine what was “unnecessary” within the meaning of CPLR 5205 (d) (3)].)
In considering the status of an award of child support under CPLR 5205 (d) (3), the Child Support Standards Act guidelines have seemingly removed the court’s discretion in resolving the amount of child support for the “reasonable requirements” of the children. Under this analysis, even if CPLR 5205 (d) (3) applies to the funds held in escrow in this case, there is a reasonable argument that the entire amount — which reflects an amount less than the accrued amount owed under the original judgment of divorce — may be considered presumptively necessary for the “reasonable requirements” of the children.
However, the unique facts of this case lend themselves to an equally compelling counter argument. The wife was not paid any child support for more than 16 years. The wife’s current counsel, in her affidavit before this court, alleges that the wife has “chased the plaintiff for 17 years,” but in the wife’s affidavit, she makes no reference to any attempt to collect outstanding child support from her ex-husband prior to retaining her former attorney. In the myriad papers submitted to this court on prior motions, there is no evidence of any prior enforcement actions before 2011. In an earlier affidavit, sworn to October 6, 2011, the wife alleges she could “recall repeatedly attempting to enforce the judgment of divorce for child support, but to no avail.” There is sufficient evidence in this case upon which a court could infer from 16 years of nonsupport by the husband and inaction by the wife to collect the rapidly accruing sums that the wife did not need the husband’s entire child support payments to support the children. Under this argument, the wife, in seeking child support for now emancipated or almost emancipated children, would — in the face of an argument by her former counsel that the funds were unnecessary for the reasonable requirements of the children — need to establish that *318 these funds are necessary for the reasonable requirements of the children now.
Under all the circumstances, this court elects to abide by CPLR 5226, and the holding in Balanoff v Niosi, and proceed to a calculation of the children’s reasonable requirements via an installment payment plan. In Balanoff v Niosi, the Court, having concluded that the attorney-creditor had not pursued the proper method for determining the amount of his claim, nonetheless, held that the attorney was permitted, without prejudice, to apply for an installment payment order pursuant to CPLR 5226. This court takes the same tact here. The amounts held in escrow shall remain in escrow. The former attorney for the wife may file such a proceeding within 20 days of this order. He must raise the issue of the children’s reasonable requirements in his motion papers and the burden then shifts to the wife or the children to establish “reasonable requirements” of the children. If there is an amount in excess of the children’s reasonable requirements, the attorney may access payment of that surplus from the escrow account through his charging lien.
Disgorgement of Funds Already Paid
While setting forth the procedure for the future payments from the wife to the attorney, this court declines the wife’s invitation to disgorge payment made previously from the recovered funds to the wife’s attorney and her husband’s attorney. The wife’s claim for disgorgement is really an equitable remedy which, under the status of this case, remains without a dancing partner in the form of a cause of action. Disgorgement has been allowed as a remedy for malpractice claims. (Mecca v Shang, 258 AD2d 569 [2d Dept 1999] [dismissing a disgorgement claim because it was predicated upon the same factual allegations as the malpractice claim and sought damages which may be recovered on that cause of action].) Disgorgement has also been utilized to remedy breach of contract or fiduciary duty claims. (South Shore Neurologic Assoc., P.C. v Ruskin Moscou Faltischek, P.C., 2011 NY Slip Op 31354[U] [Sup Ct, Suffolk County 2011] [allowing disgorgement if breach of fiduciary duty exists]; Holloway v Rubman, 2010 NY Slip Op 30471[U] [Sup Ct, NY County 2010] [dismissal of the contract and the disgorgement claims as duplicative of the malpractice claim].) In the absence of any claimed malpractice or breach of fiduciary duty, disgorgement of earned fees remains disfavored by the courts. (Cooke-Zwiebach v Oziel, 33 Misc 3d 1232[A], 2011 NY *319 Slip Op 52194[U], *10 [Sup Ct, NY County 2011] [disgorgement of a referral fee would effect a forfeiture, disfavored in the courts, and would allow plaintiffs “to use public policy as a sword for personal gain rather than a shield for the public”]; Moodform Mission v Campbell, 2011 NY Slip Op 31787[U] [Sup Ct, NY County 2011] [disgorgement may not stand as an independent cause of action as disgorgement of payments is really a damages claim].)
In this case, the court previously ordered the payment of $15,000 from the escrowed funds to the wife’s attorney. At the time of the order, the exact nature of the funds was not decided. The money was — and still is — titled in the name of the husband. By ordering the payment of the wife’s attorney fees, the court was complying with the requirements of the Domestic Relations Law, as the wife was presumed to be the less-monied spouse. (Domestic Relations Law § 237.) The payment of fees to the wife’s counsel was made from money titled in the name of the husband. The fees paid to the husband’s attorney was made from funds, titled in his own name, to permit him to finance his defense, which included a dispute over the amount owed and the alleged offsets for the cost of health insurance.[9]
The wife’s counsel argues that this court was without jurisdiction to order payment of fees from the wife’s child support. The wife’s attorney mistakenly concludes that the entire funds are child support when there has been no judicial determination of what portion of the escrowed sum is actually due and owing to the wife. In fact, the money, in its current status, is still owned by the husband and this court unmistakably has jurisdiction over the funds. Seen in this light — as the facts dictate — the wife’s claim that the court lacks jurisdiction over the money and cannot allocate it is without merit.
Even if this court considered the equitable remedy of disgorgement, there is no cause of action pleaded in any action or stated in the responding papers to provide the basis for it. There is no allegation of any malpractice on the part of either attorney. Neither the word “malpractice” nor “breach of fiduciary duty” is used in the wife’s affidavit or that of her counsel. There is no pending plenary action for malpractice or breach of fiduciary duty against the wife’s former attorney. The wife, in her
*320 affidavit, states that she feels that her former attorney “mislead [her] as to what he was going to accomplish for [her]” and adds that she “feels that [she] has been held hostage by the legal system and [her former attorney].” These allegations do not form the basis for a claim for malpractice or any breach of fiduciary duty. The wife also alleges, through her attorney’s affidavit, that the former attorney failed to provide, in his application for fees and to withdraw, a copy of his filed retainer and the client’s bill of rights as required by the court rules. (Edelman v Poster, 72 AD3d 182 [1st Dept 2010].) But, as even the First Department admitted in Edelman v Poster, where there has been “substantial compliance” with the matrimonial rules, an attorney will be allowed to recover the fees owed for services rendered, but not yet paid for. (Id. at 184.) The retainer agreement between the wife and her former counsel was signed and filed by June 2012. (Daniele v Puntillo, 97 AD3d 512, 513 [1st Dept 2012] [even a later filed retainer agreement still constitutes “substantial compliance” with the court rules].) This court finds that the allegations against the attorney for violation of the court rules do not rise to the level of malpractice or a breach of fiduciary duty sufficient to support the remedy of disgorgement.
The attorney’s charging lien is valid. His request for enforcement of the lien against the funds held in escrow in this case is denied without prejudice to renew his request for enforcement of the lien under CPLR 5205 (d) (3) and 5226. The request to disgorge the fees already advanced to counsel is denied.

. The court notes that there is no basis for any offset in the divorce settlement stipulation in this matter.

. The Fourth Department cited Law Off. of Tony Center v Banker (185 Ga App 809, 366 SE2d 167 [1988]) in support of this conclusion. This case is frequently cited by courts in reviewing the interaction between liens and child *302 support. However, the Georgia “charging lien” (see Ga Code Ann § 15-19-14) does not appear to be anywhere near as broad as the New York charging lien in section 475 of the Judiciary Law.

. The court in Shipman advances a theory that the recipient mother is a “trustee” for child support funds and because she does not have a possessory interest in the child support, no charging lien can attach to these funds. The court cites two out-of-state cases for this “trustee” theory. (Sue Davidson, P.C. v Naranjo, 904 P2d 354 [Wyo 1995]; Law Off. of Tony Center v Baker, 185 Ga App 809, 366 SE2d 167 [1988].) While this court acknowledges that appropriate weight should be given to courts in other states, this court cannot find any support for the “trusteeship” principle in New York law. Furthermore, even if the wife has no possessory interest in the funds and is only a trustee, the language of section 475 of the Judiciary Law permits the lien to attach to funds in “whatever hands they may come.” (See Rosenman & Colin v Winston, 205 AD2d 451 [1st Dept 1994] [charging lien permitted against an interest in a trust].)

. The court cited Levine v Levine (206 Misc 884 [Sup Ct, Queens County 1954]), which was also cited by the Fourth Department in Schelter v Schelter (206 AD2d 865 [4th Dept 1994]). However, in Levine v Levine, the court simply reiterated the holding in Turner v Woolworth that a retaining lien could not intercept alimony payments. The court in Levine v Levine extended that logic to deny a lien on any future alimony payments, but recognized that the attorney, if discharged without cause, could maintain an action for quantum meruit and recover the reasonable value of his services. The opinion did not address the issue of the impact of a lien on child support arrears.

. This scenario also leads to an equally perplexing question: could a court order an award of attorney fees out of the corpus of such a fund, if the amount collected was less than the amount owed to the child support recipient? In that scenario, the court would be converting “child support” into an award of attorney fees, a situation not dissimilar to the dilemma here.

. The court’s view on this issue is simple. If a scofflaw parent owes $10,000 in child support arrears and the court awards the recipient’s attorney $1,500 in fees, then because of the sacrosanct nature of child support, the recipient’s attorney could not be paid until the entire child support arrears had been paid because otherwise, the scofflaw is diverting child support payments to the attorney in violation of the Shipman command. Faced with extended delays in payments of an attorney fees award, why would an attorney undertake such representation?

. This approach leads to another question: what if the attorney demands an advance retainer payment before bringing the action to recover child support arrears? This sum constitutes an advance payment to recover child support. If the charging lien — collecting fees after recovering child support — is void, then is the advance retainer — collecting fees prior to recovering child support — also void? The court leaves this question to another day.

. If this court declared any charging lien against the proceeds held by the court invalid, the result would boomerang against the wife’s current counsel. The current counsel would have no greater right to any portion of the proceeds than the former attorney. The current attorney could not collect any sums from the proceeds until the wife was paid all arrears owed to her. In this case, there is a substantial chance that the husband, if he turns over every asset he owns — or once owned — will not have sufficient funds to pay the amassed arrears owed to his wife. Under the logic of Shipman and the current attorney’s advocated position, neither the former lawyer nor the current attorney could assert a claim against the proceeds because such a claim would be invading the wife’s child support. It would seem manifestly unfair if the wife could permit the current counsel to be paid out of the proceeds by agreement, but prevent the same proceeds from being used to satisfy the former attorney’s lien. This result would give the wife the ability to pay her current attorney and deny the same benefit to her former attorney, even though the work of the latter has created the proceeds before the court. This result elevates the rights of the client to decide who gets paid and completely erodes any protection for the attorney’s lien, a result that is manifestly unjust.

. As noted earlier, if disgorgement is granted under the wife’s theory, no obligated spouse could finance his legal fees while owing child support because the recipient could claim that by paying an attorney, the payor was diverting funds that should be used to pay his support obligations.